ELIZABETH COATS ET AL. V. JAMES F. ELLIOTT, ADMINISTRATOR.

A fraudulent purchaser, *pendente lite*, may be made a party defendant, by amendment.

Suing out a writ of sequestration, does not operate as a transfer of property, or enable the defendant to dispose of it.

That a party, whose admissions have been given in evidence, was "ignorant and simple-minded," may, in some cases, be admissible as evidence, when it is material to know under what circumstances they were made; but when it will not add to the information possessed by the jury, or aid them in a just estimate of the weight to be given to the admissions, the court may decline to receive it.

The court has a discretion to fix some limit to the admission of evidence, though it may have a remote possible bearing on the questions for the consideration of the jury.

The averments in the original petition, stating a party's cause of action, although sworn to for the purpose of obtaining a writ of sequestration, after having been corrected by amendment, are not such admissions as bind the plaintiff.

Such averments, after having been stricken from the petition by amendment, are not evidence, or a proper subject for discussion before the jury; and the court may decline to permit them to be read in evidence, but having done so, the amendment may also be read in connexion with it.

In a suit by an administrator against the wife of his intestate, if she claim the property as her separate estate; the burden of proof is upon her, and she must establish her title, by clear and satisfactory evidence.

Proof that the husband bought a negro woman and child, partly with his own and partly with his wife's money, (the relative amounts not being shown,) and afterwards said, that he had taken the woman, and given the wife the child, does not prove that the child was purchased with the separate means of the wife.

Proof of occasional naked declarations of the husband, that the property belonged to the wife, is the weakest and most unsatisfactory kind of evidence.

The credibility of a witness is a subject for the consideration of the jury; they are not obliged to believe a witness, simply because he is not impeached by other witnesses.

APPEAL from Panola.    Tried below before the Hon. Charles A. Frazer.

This suit was commenced by the appellee, as the administra-

tor *de bonis non* of Jacob H. Coats, deceased, against the appellant, Elizabeth Coats, the wife of his intestate.

The plaintiff alleged in his petition, which was sworn to, that as such administrator, he was entitled to the possession, for purposes of administration, of a negro girl, describing her, who, he averred, was the property of the said estate, but had been wrongfully seized and withheld by the said Elizabeth, from his possession, for two years; and asked for judgment, for the negro, or her value; and the reasonable value of her hire for two years.

The plaintiff also prayed, in his petition, for a writ of sequestration, which was accordingly issued, and the negro seized, but afterwards replevied by the defendant.

At the first term of the court, the defendant answered by a general denial, and the statute of limitations of two years; and claimed damages for the wrongful suing out of the writ of sequestration, which, on her motion, was quashed.

The plaintiff afterwards amended his petition, and alleged therein, that David C. Coats was appointed administrator of the estate of the said Jacob H. Coats, in January, 1855, and immediately thereafter took into his possession, as such administrator, all of the property belonging to the estate of the said Jacob H. Coats, including the said negro girl, and inventoried her as a part of the property in his possession, and that he had possession of her during all the time he was the administrator of the said estate; during all which time, he and the said defendant, Elizabeth Coats, lived in the same house, and on the premises where the said Jacob resided, at the time of his death; that the said David C. Coats was afterwards, by order of court, dismissed from the administration of the said estate, and that the plaintiff was appointed, as stated in his original petition. That the defendant pointed out the said negro to him, to be inventoried and appraised, as a part of the estate of his intestate; and that she was so inventoried and returned, by the instructions of the defendant, who then set up no claim to her; that he left the said negro in the possession of the defendant, who promised to deliver her to him, when he should wish to take her into his actual possession.

It was further averred, that the said negro remained in the possession of the defendant, with the plaintiff's consent, until the —— day of January, 1857, when he demanded her of defendant, who refused to deliver her, and then, for the first time, set up an adverse claim.

The plaintiff, in his amended petition, also alleged, that since the institution of his suit, the appellant, William A. Jernigan, with a full knowledge of the pendency of the suit, fraudulently combining with the said Elizabeth, for the purpose of cheating the plaintiff, and the estate of the said Jacob H. Coats, deceased, had obtained possession of the said negro, from the said Elizabeth, and had sold and converted her to his own use, and had caused and procured her to be removed out of the state, to some place unknown to the plaintiff; and asked that the said Jernigan should be also made a party defendant, and that he should have judgment against both defendants, for the value of the negro, her hire, damages and costs.

The defendants excepted to the amended petition, upon the ground that the plaintiff's causes of action against the defendants, were separate and distinct; that against the defendant, Elizabeth, existing previous to the institution of the suit, and that against the defendant, Jernigan, had accrued since its commencement, and that they could not, therefore, be joined in one suit. The exceptions were overruled by the court, and defendant, Jernigan, filed an answer to the merits.

Upon the trial, the plaintiff proved, as expressed in the statement of facts, that the negro girl in controversy was in the possession of the family of plaintiff's intestate, at the time of his death; who purchased her, with her mother, some years before his death, and paid for both of them, with a certificate or pre-emption claim to land, some cattle, and money; the money belonging partly to himself, and partly to the defendant, Elizabeth, which had been made during coverture; and that the negro was, after the commencement of the suit, and previous to the filing of the amendment, making the defendant, Jernigan, a party, seen in his possession. It was also shown, by a letter written by Jernigan, that

he had purchased the negro from the defendant, Elizabeth Coats, and had sold her; also that he had promised that he would secure the sureties on the replevin bond given by the original defendant, against damage on account of the removal of the negro. It was also shown, that the negro had been inventoried as the property of the estate, by the former administrator, David C. Coats; the defendant's witnesses, however, said that she was not in his possession, but in that of the defendant, Elizabeth, while he was administrator. The testimony further showed, that a part of the time David C. Coats lived in the house with Elizabeth, and the remainder, in a house about one hundred and fifty yards from her's, on the same premises.

The defendant proved, by a son of the said Elizabeth, who was, at the time of the trial, about eighteen years old, that he had frequently heard his father, the plaintiff's intestate, say, that he had bought the negro girl in controversy, and her mother, with his, and his wife's (defendant Elizabeth's) money; and that he had taken the mother, and given his wife the girl now in suit; and that he had heard his father refuse to sell the girl, stating as a reason for the refusal, that she belonged to his wife. They also proved, by another witness, a cousin of the intestate, that he had known the family about eight years, and had heard the intestate, on two or three occasions, make similar declarations to those testified to by the last witness; and that he had heard him refuse to sell the negro on one occasion, for the same reason; but, on cross-examination, being asked to describe the man who proposed to purchase the negro, said, "that he could give no other description of him; that he was a man, a human being, between four and six feet high; did not know whether he was a young or old man; black eyed, blue or red."

The defendants also read in evidence, under their answers setting up the statute of limitations, that part of the original petition, which alleged that the defendant, Elizabeth Coats, had held possession of the negro, adversely to him, for two years, and claiming her for that length of time. The plaintiff then offered, and was permitted by the court to read his amended petition,

explaining and amending that part of his original petition; to which the defendants excepted.

The plaintiff also proved, in rebuttal, that after the administration on the estate of her husband, by David C. Coats, the defendant, Elizabeth, had gone to the judge of the County Court, to see about having the said negro set apart to her by the said court, and had offered to substitute her homestead, set apart to her by the court, and take the said girl in lieu of it; and that she had spoken of the girl, to different witnesses, as belonging to the estate of her husband.

The defendants then proposed, in explanation of these acts and declarations, to prove that the defendant, Elizabeth, "was an extremely ignorant and simple-minded woman, and was totally unacquainted with business transactions;" which, on objection by the plaintiff, was refused by the court, and the defendants excepted.

There was a verdict and judgment in favor of plaintiff against both defendants, from which they took their appeal.

*Poag & De Berry* and *P. Murrah*, for the appellants.

*Donley & Anderson* and *Charles D. Moore*, for the appellee.

WHEELER, C. J.—The objection to the judgment, that Jernigan was improperly made a party defendant, is not tenable. The right thus to make the fraudulent vendee of a defendant a party, under circumstances like the present, was maintained by the decision of this court in the case of Oliver v. Chapman, 15 Texas Rep. 400. (McAnelly v. Chapman, 18 Id. 198.)

Jernigan was a volunteer in becoming a party to the controversy. He undertook to take control of the subject-matter in litigation between the original parties, and he was very properly made a party to the suit in which he had intermeddled, to the prejudice of the plaintiff's right, in order to prevent multiplicity of suits; and to enable the court to pronounce, and give effect, in this suit, to the legal consequence of his interference with the

property, *pendente lite*, and thus, by its judgment, bind all the parties claiming an interest in the subject-matter in litigation.

It is scarcely necessary to say, that the sueing out of the writ of sequestration, by the plaintiff, did not operate a transfer of the title to the property, or enable the defendant to dispose of it out of the custody of the law, and the power of the court. The authorities cited to maintain her right to do so, manifestly have no application to the case.

It is further objected to the judgment, that the court erred in refusing to admit evidence offered, to prove that the defendant, Coats, was an "ignorant and simple-minded woman." It is to be observed, that the proposed evidence was not relevant to any issue formed by the pleadings. But it is insisted, that it was admissible as rebutting evidence, to qualify or explain the conduct and admissions of the defendant. It may readily be conceived, that there may be cases where it will be very material to know under what circumstances a party made admissions, or adopted a certain course of conduct, and whether he acted with knowledge, or in ignorance of his rights; and in connexion with other circumstances, it may be very proper to submit to a jury, to be considered by them in passing upon the acts or admissions of the party, evidence of the character of that which was proposed in the present case. But in the facts or circumstances of this case, we see nothing to require the admission of such evidence. It might not have been improper to admit the proposed testimony. But it is not perceived that it could have had any influence upon the decision of the case. We see no cause to believe, that the jury would have been thereby any better informed, as to the view it was proper for them to take of the conduct of the party, or the merits of the case.

The court must have a discretion to fix some limit to the admission of evidence, even having some remote possible bearing upon questions which it is proper for the jury to consider; and from the evidence in the case, the court may very well have concluded, that the proposed evidence would add nothing material to the information which the jury already possessed; and

that they were as capable of forming a just estimate of the weight to be attached to the acts or admissions of the party, without as with it. We are not aware of any rule of evidence that required the court to admit the testimony, and are of opinion that the refusal to do so is not error.

It is further insisted, that the court erred in admitting in evidence the plaintiff's amended petition, correcting the averment in his original petition, respecting the period of the defendant's adverse possession. It is contended, that the plaintiff is bound by the statement in his original petition. We do not so regard it. The admissions of attorneys which bind their clients, as justicial or, as they are called, solemn admissions, are such as are made for the purpose of alleviating the stringency of some rule of practice, or of dispensing with the formal proof of some fact at the trial. (1 Greenl. Ev. §§ 186, 205.)

The present was not such an admission. It was not made, or intended, as an admission. It was simply a case of bad pleading. It was the case of a party so stating his cause of action, as that, upon the face of the petition, it appeared to be barred by the statute of limitations. But it cannot be doubted, that the petition was amendable in this respect, as well as in any other. The mistake must have been fatal to the plaintiff's case, if he had not seen proper to amend. But, unquestionably, it was competent for him to amend, by so correcting his averments, as to show that, in point of fact, his cause of action was not barred. It is every day's practice to permit a party, who has failed to state a cause of action, so to amend, as to state one; as, if upon the face of the petition, a demand, upon which the suit is brought, appears to be barred, the court will permit the plaintiff to amend, by alleging a new promise, which will take the case out of the operation of the statute. The present is not distinguishable from that case. The plaintiff was not concluded by his averments in his original petition. (Epperson v. Young, 19 Texas Rep. 475; 14 Id. 618.) Nor should the mistake have been the occasion of any embarrassment to him, after the amendment had been allowed, by which it was obviated. The court

might very properly have declined to permit the original petition to be submitted to the jury. They had no concern with the pleadings; nor were they the proper subject of evidence or discussion before the jury. But the original petition having been admitted in evidence, there was no error in permitting the amendment also to be read in connexion with it.

The defendant having set up a claim to the slave, as her separate property, the burden of proof was on her, to establish her title by clear and satisfactory evidence. There was no proof of the amount of the defendant's money employed in the purchase. There is a failure of evidence to prove title in her to the property, as having been purchased with her separate funds. Her title and right to recover the slave in controversy, therefore, rest solely on the naked declarations of her deceased husband, testified to by two witnesses, and one of them her son and a minor, several years after the decease of her husband. It must be admitted, that this is the weakest and most unsatisfactory kind of evidence. If it be deemed sufficient evidence of title, it is certainly liable to much animadversion, on account of its unsatisfactory and dangerous character, and ought to be received and acted on by a jury with great caution. (Boyd v. McLean, 1 Johns. Ch. Rep. 582, 590.)

It appears by the statement of facts, that the credibility of the witnesses was the subject of observation before the jury. It was a subject proper for their consideration. The jury are not obliged to receive the statements of a witness as true, because he is not impeached by other witnesses upon the stand. It was for them to judge of the credibility of the witnesses, and the weight of evidence. The question of fact was fairly left to their decision by the charge of the court; and in view of the character of the testimony, we cannot say, that the verdict was contrary to the evidence. We are of opinion, that there is no error in the judgment, and it is affirmed.

Judgment affirmed.