L. C. BARRETT v. W. H. FEATHERSTONE ET AL.

No. 417.—Decided May 25, 1896.

1. **Charge—Fraudulent Representations—Knowledge.**

On issue of fraud, as defense to note sued on, consisting in representations as to existing facts inducing the contract, a charge that allowed the defense if the statements made were false and known to be so when made, was properly held not ground for reversal where: (1) The real issue presented by the evidence was not as to the good faith of the representations, but as to whether they were in fact made. (2) No instructions were asked submitting the issue of constructive fraud in inducing a contract by false representations though believing them to be true—the charge given being correct law as stated.

2. **Fraud—Charge.**

See opinions for charge on fraud in procuring note given in renewal of previous ones held not subject to the criticism that it excluded from consideration of the jury fraud in obtaining the original notes.

3. **Evidence—Immaterial Error.**

Refusal to admit upon an issue of fraud evidence which, if admitted, should not have affected the result, as of facts which are trivial or indeterminate in their nature, or which are proved by other evidence admitted, or which are not controverted, is not ground for reversal.

4. **Admissions—Pleadings Abandoned by Amendment.**

Pleadings prepared and filed by a party, though superseded by amendment, may be introduced in evidence against him as admissions. The reason of the rule applies with peculiar force to pleadings which are required by the law to be and are verified by affidavit.

CERTIFICATE OF DISSENT from Second District, in an appeal from Clay County.

The judgment of the trial court was affirmed by the Court of Civil Appeals in an opinion by Stevens, Associate Justice, but Associate Justice Hunter filed a dissenting opinion and on motion of appellant the case was certified to the Supreme Court.

As the points covered by the dissent include most of the controverted questions in the case, and are not discussed at length in the present opinion, a publication of both the majority and dissenting opinions in the Court of Civil Appeals is deemed proper, especially as such opinions were not selected to be reported in the official reports of that court.

*Chesnutt & Hurt, Hogsett & Orrick* and *L. C. Barrett* in pro. per., for appellant.

*Templeton & Patton,* for appellees.

#### OPINION OF MAJORITY OF COURT OF CIVIL APPEALS.

STEVENS, Associate Justice.—Appellee W. B. Worsham, S. Davidson, W. H. Featherston, and C. W. Easley, all resident citizens of Clay County, instituted this suit against appellant, also of that county, upon his promissory note dated May 20, 1892, payable to their order, in the sum of $857.50, besides interest and attorney's fees. They also sought to foreclose a real estate mortgage or deed of trust, dated May 26, 1892, and executed to better secure this note.

Appellant admitted their right to recover, unless it should be defeated by the matters set up in his plea of failure of consideration. The amount of the note sued on was equal to the total amount of principal and interest of two other notes previously executed by appellant, and referred to below, one for $700 and the other for $100. A mortgage was made contemporaneously with the execution of the $700 note, to secure its payment, upon the same property afterwards covered by that of May 26, 1892.

The mortgage declared on contained the following recital: "That I, L. C. Barrett, of the County of Clay and State of Texas, for and in consideration of the sum of $857.50, to me in hand this day paid by Worsham, Davidson, Featherston, and Easley, of said county and State, and for and in consideration that they have this day and do by these presents release me of and from the payment of certain obligations due from me, to the amount of $800 and interest, payable to the Red River and Southwestern Railroad, this being the real and only consideration, together with the debt and trust hereinafter mentioned, and that by the acceptance of this obligation the said C. W. Easley, trustee, together with the said Davidson, Worsham and Featherston, do hereby release a certain trust deed to secure $700 and interest, dated 5th day of February, 1891, covering the lands and lots hereinafter described, to the said Easley, trustee, * * * which said trust deed was made to secure

$700 and interest, the real consideration of this instrument, have grant-ed, bargained, sold," etc.

The contention of appellant was that the last note had been obtained by means of false and fraudulent representations, to the effect that ap-pellees had made arrangements with the Union Trust Co. to procure money with which to complete the building of a railroad from the town of Henrietta to the town of Archer, alleging that he had given the note upon that representation as a matter of accommodation to enable them to procure the money to complete the road. He further alleged that he had been fraudulently induced to sign the previous notes upon the faith of their representations and promises that the railroad between the points named would be speedily built, or at least within a reasonable time, by them and the Red River and Southwestern Railroad Company. Appellant also reconvened for the value of his services in assisting to raise the bonus.

We find the following conclusions of fact:

1. That appellees, with E. H. East, of Archer, and others, in the latter part of the year 1890, obtained a charter under the name above indicated to construct and operate a railway from the Red River to the Concho River, through Clay, Archer and other counties.

2. That in the early part of January of the following year they made a proposition in the name of said Red River and Southwestern Railway Co. to the citizens of Henrietta, which was accepted by appellant and other subscribers, in the terms following:

"Henrietta, Texas, January 3, 1891.
"To the Board of Trade and Citizens of Henrietta:

"Proposition of the Red River & Southwestern Railroad Co. to the citizens of Henrietta, Texas.

"If the citizens of Henrietta and Clay County will give a subsidy of $30,000, right of way through Clay County, and depot grounds in Hen-rietta, the above named railway company will begin work on a road from Henrietta to Archer City within sixty days from the time said subsidy is raised. Said subsidy is to be secured by bankable notes, and payable proportionately as each five miles of the grade is completed to the Clay County line.                          "C. W. Easley,
                                                Secretary.
                                   "E. H. East,
                                                President.

"We, the undersigned, agree to pay the amounts written opposite our respective names, and accept the above proposition."

Here follows list of names, including that of appellant, with $500 placed opposite it, which seems to have been increased afterwards to $800.

3. That some time towards the latter part of February thereafter, upon the bonus being subscribed, the notes of numerous subscribers were

executed in accordance with the terms stated above, payable as each five miles of the grade should be completed. There is a conflict in the evidence as to whether the notes executed in the first instance by appellant provided for payment as the road was "graded," or as the road was "completed," the evidence preponderating, as we think, in favor of the former condition. But the undisputed testimony shows that if their payment was conditioned on the completing of the road and not of the grade, the defendant knew of that fact at the time he executed the note and mortgage sued on.

4. That the road was graded as proposed between the points named. There is a slight conflict in the evidence as to whether this grade was completed. But, if it was in any sense incomplete, the undisputed evidence shows that the appellant knew the condition of the grade when he executed the instruments sued on. These were executed long after work on the grade had ceased, and after the grade had been in all substantial respects completed, according to the decided preponderance of the testimony.

5. That appellees furnished the money to grade the road from Henrietta to the county line, and east thence to the town of Archer; in consideration of which the railway company assigned the Henrietta subsidy to appellees and the Archer subsidy to East, the amount so paid by them, however, exceeding the value of the subsidy.

6. That the sole consideration of the note and mortgage declared on was as specified in said mortgage.

7. That no fraudulent misrepresentations or promises whatever were made to appellant to obtain either the original notes or the substituted note.

The verdict of the jury, on issues submitted by the court, establishes conclusions 6 and 7; and a contrary verdict on the issues involved in these conclusions would, in our opinion, have been contrary to the manifest weight and great preponderance of the testimony.

*Conclusions of Law.*—Appellant's assignments of error are quite voluminously stated, but the real issues in the case we find, after diligent search, are not very numerous. The whole forty-one assignments will consequently be grouped and disposed of under four heads, as follows: first, the judgment on the demurrers; second, the admission and exclusion of evidence; third, the charges given and refused; fourth, the cross-action.

1. We dispose of the errors assigned to the rulings on the demurrers by adopting the following counter-proposition from appellees' brief: "If the court erred in sustaining appellees' exceptions to appellant's answer, such error was without prejudice, since the matters and facts excepted to were plead in other parts of the answer, and evidence in support thereof was introduced by appellant, and such error, if any there be, will not necessitate a reversal of the case."

2. There was no error in admitting in evidence the original answer

of defendant below which had been prepared and sworn to by him, though it had been superseded as pleading by amendment. The able and exhaustive opinion of Judge Elliott in the case of Boots v. Canine, 94 Ind., 407, reviewing the authorities and giving unanswerable reasons why such evidence is admissible, should put this question at rest. This opinion clearly demonstrates that, on principle, under every system of pleading where fiction is abolished and the pleader is required to truly state the facts, such statements, when made with the knowledge of the party himself, and not merely by his attorney, are, like any other admissions, competent though not conclusive evidence against him; and that in the States where the code practice prevails the courts are, consequently, unanimous on the right to introduce such admissions in evidence, with the possible exception of California, where the decisions are in conflict. It also conclusively demonstrates that this rule is applicable to a pleading which has been superseded by amendment, whether offered in evidence upon the trial of the case in which it was originally filed or in some other case.

Upon this subject the following language is used: "We should feel that we were doing an idle thing if we should undertake to cite authority upon the proposition that a party can not be deprived of his right to give in evidence an admission because the latter had withdrawn it. Even in criminal cases, an admission made by the accused before the examining magistrate is not rendered incompetent by a subsequent withdrawal. The withdrawal of an admission may, in proper cases, go in explanation, but it can not change the rule as to its competency. We have never, until the argument in this case, known it to be asserted that the withdrawal of a confession or an admission destroyed its competency as evidence against the person making it. If it did, then criminals might destroy evidence by retraction, and parties escape admissions by a like course. The law tolerates no such illogical procedure. It is proper to show the withdrawal and all attendant circumstances, for the purpose of determining the weight to be attached to the admission, but not for the purpose of destroying its competency." And further: "To hold otherwise would be to declare that a party may by a retraction deprive his adversary of admissions previously made, and surely no one will seriously contend that this can be the law."

The reason for the rule has peculiar force in cases like this, where the pleader is not only required to truly state the facts, but also to verify the statement by his affidavit. Such affidavit may become the subject of a prosecution for perjury. If made by mistake, whether amended or not, that fact would defeat the prosecution; but if false, and deliberately and willfully made, the fact of a subsequent withdrawal by amendment would not. It is for the jury and not the court to determine whether the false statement was deliberately or mistakenly made. The question, then, in a criminal prosecution would clearly be one as to the effect and not the competency of the evidence. No reason could be given for a different rule in a civil case. But if the competency of the evi-

dence in question as an admission could reasonably be doubted, in connection with the explanation which appellant was permitted to make of the important change thus introduced by his amended plea, the original was clearly admissible on cross-examination as affecting his credibility as a witness.

Various other rulings under this head are complained of, but, after a careful examination of the numerous bills of exception, in connection with the statement of facts, we find no substantial merit in any of the objections urged thereto. In some instances we find in the statement of facts the very evidence to the exclusion of which error is assigned. Take, for example, the first bill of exceptions. For the purpose of showing that appellees and said company never intended to build the line of railroad from Henrietta to Archer City, appellant offered to prove that the railway company in question never had any books or office. It appears, however, from the statement of facts that books were kept showing the transactions of the company. It also appears from the statement of facts that the issue on this branch of the case was, whether the undertaking of appellees, as represented to appellant, was to build and complete the road or only to grade it. They did not pretend on the trial that they ever intended to do the former, but only the latter; hence it became unimportant whether the evidence was admitted or excluded. Nor was it pretended that appellant was ignorant of the manner in which the company had been chartered and was proceeding.

Taken altogether, we think these several rulings relate to matters too trivial and indeterminate in their nature to warrant a reversal of the judgment. The case was not one of anything like equally balanced testimony, especially on the issue of alleged fraud in procuring the execution of the original subscription and notes, to which these rulings mainly related. The verdict seems so entirely in accord with the great weight and preponderance of the evidence that the slight circumstances excluded and admitted, if there was error in the rulings, which we do not concede, should not have affected the result had the rulings been different. Appellant took a conspicuous part in raising the bonus, claiming to be something of an expert in that line; and both his conduct and admissions were largely at variance with his contention on the trial, which contention also was in sharp conflict with quite a formidable array of evidence, both positive and circumstantial. Besides, if there had been fraud in the original subscription which he had helped to raise, or want of consideration in his first notes, when the note sued on was executed such facts, after so great a lapse of time and under all the circumstances, he could not reasonably have been ignorant of. Hunter v. Lanius, 82 Texas, 686.

3. The second and fifth subdivisions of the charge, submitting the issues of actual fraud as alleged, are complained of, in that they did not also submit the issue of constructive fraud arising from false representations made without any fraudulent intent. We are of opinion that the evidence did not warrant the submission of that phase of the case. If

appellees or any of them made the statement to appellant that any arrangement had been made with the Union Trust Co. to raise money to iron the road, as claimed by appellant but denied by them, they must have known it to be false at the time of making it, because they all testified on the trial that they had never made any such arrangement. The only phase of fraud, then, raised by the evidence was the one submitted. Besides, if there was error in not submitting the issue of constructive fraud, it was one of omission merely, and is not available here in the absence of an effort in the trial court on the part of appellant to supply the omission by requesting an instruction.

The second, fourth and fifth clauses of the charge are complained of together, on the ground that they had the effect of excluding from the consideration of the jury all fraudulent representations except those made about the time of the execution of the notes mentioned in the charge. They are also complained of together, on the ground that they excluded from the consideration of the jury a theory of ratification suggested in appellant's brief. These objections, presented by the sixteenth and twenty-first assignments, are alike without merit. They involve strained criticisms of the charge, and the misleading tendencies complained of we fail to appreciate. No error is assigned to the fourth and fifth charges separately.

The nineteenth assignment complains of the giving of special charge No. 1 requested by appellees, reading: "You are further instructed that by false or fraudulent misrepresentations as used in the main charge, is meant the false or fraudulent misrepresentation of a material ascertainable fact, and not merely a statement of opinion, judgment, probability or expectancy."

This charge stated substantially a correct proposition, and there was a phase of the evidence which rendered it admissible. Appellees, or some of them, had at different times expressed opinions favorable to the success of the railroad enterprise, indicating that they would probably be able after grading the road to get some other company to iron and operate it. Appellant had an equal opportunity of forming his own opinions in this respect, and had no right to rely upon those of appellees.

In submitting the issues to the jury, the main charge clearly recognized the distinction between fraudulent misrepresentations of facts and false and fraudulent promises. The second paragraph, which submitted the issue as to how the note sued on was obtained, authorized the jury to consider both fraudulent representations and false promises; and the fifth paragraph, which submitted the issue as to how the first notes were obtained, submitted the legal effect of false and fraudulent promises only. The charge given at the request of appellees could not have been understood by the jury as withdrawing the fifth paragraph, which had stated so fully and pointedly the law arising upon false and fraudulent promises, but they must have understood, as clearly appears on the surface, that it was intended only as an explanation or qualification of the

term "fraudulent representations" as used in the charge, and not fraudulent promises as there used. The court intended no such absurdity as the construction placed by appellant upon the effect of giving the requested charge would lead to. We must also presume that the jury was composed of men of ordinary intelligence, and therefore that a fair and reasonable interpretation was given the charge.

Appellant requested the court to give a charge defining accommodation paper, which was refused. We find nothing in the record calling for such a charge. He was permitted to explain to the jury fully the meaning of accommodation paper, and there was no controversy upon this point.

We find nothing in the other errors assigned to the giving and refusing of charges which seems to require notice.

It is not the province of this court to assign errors to the charge not assigned by the complaining party. No assignment is found in the brief distinctly specifying the fourth paragraph of the charge as erroneous. We are therefore precluded by statute from considering the correctness of the proposition which it contains. Rev. Stats., art. 1037. Besides, any objection that might be taken to it would be theoretical merely, and would be entirely removed by reading the whole charge in the light of the issues developed on the trial. The effect of alleged fraud in obtaining the note sued on had already been submitted in the second paragraph of the charge; hence there was no occasion to repeat it in the fourth paragraph, which submitted the issue of fraud in the original notes.

4. The cross-action against appellees for services in raising the bonus was properly ignored by the court, if for no other reason, because the evidence showed beyond dispute that if any contract had been made with appellant for his services in that respect, it was without authority from either the railroad company or appellees.

This record has received unusually long and thorough consideration, from which the final conclusion results that, both upon the law and the facts, the judgment ought to be affirmed.

*Affirmed.*

Delivered February 22, 1896.

### DISSENTING OPINION.

HUNTER, Associate Justice.—In this case I find myself constrained to dissent from my brothers in their conclusions of fact as well as of law, and my reasons are as follows:

On July 20, 1893, appellees instituted this suit to recover against appellant upon the following note:

"$857.50.                          Henrietta, Texas, May 20, 1892.

"Six months after date, I, we, or either of us, promise to pay to the order of Worsham, Davidson, Featherston and Easley, at Citizens' Bank,

eight hundred fifty-seven and 50-100 dollars, with interest at the rate
of ten per cent per annum from date until paid, and ten per cent addi-
tional for attorney's fees, if collected by law or if placed in the hands
of an attorney for collection. Value received.

"(Signed)  L. C. Barrett."

Appellant answered, in effect, that in February, 1891, appellees, with
others, were engaged in getting up a subscription to aid in the building
of a railroad from Henrietta to Archer City; that as one of the sub-
scribers he (appellant) executed to C. W. Easley, treasurer, his two notes,
one for $700 and the other for $100; that these notes were payable, one-
fourth when the first five miles of said road should be completed, one-
fourth when the second five miles should be completed, one-fourth when
the third five miles should be completed, and the remaining fourth when
the grade should be completed to the west boundary line of Clay County;
that no part of said road had in fact ever been completed as called for.
That at the time the note sued upon was executed, appellees fraudulently
represented to appellant that they had made arrangements with the
Union Trust Co. to advance the money with which to procure the iron
for the road, and desired him to make a new note which they could use
as collateral security with it; that by this means they intended to obtain
the iron and complete the road; that these representations were all
false; that appellees had made no such arrangements with the Union
Trust Co., nor did they intend or expect to iron the road; that they
were relied upon by appellant, however, and by means thereof he was
induced to execute this note, which he otherwise would not have done.
He also alleged that at the time he executed this note it was understood
and agreed between him and appellees that it was only to have the effect
of accommodation paper, and was not to take the place of the previous
notes, in case appellees did not negotiate it as they expected to do.

This note was also secured by a mortgage, which contained this re-
cital: "That I, L. C. Barrett, * * * for and in consideration of
the sum of $857.50 to me in hand this day paid by Worsham, Davidson,
Featherston and Easley, of said county and State, and for and in con-
sideration that they have this day and do by these presents release me
of and from the payment of certain obligations due from me to the
amount of $800 and interest, payable to the Red River & Southwestern
Railroad, this being the real and only consideration, together with the
debt and trust hereinafter mentioned, and that by the acceptance of
this obligation the said C. W. Easley, trustee, together with the said
Davidson, Worsham and Featherston, do hereby release a certain trust
deed to secure $700 and interest, dated 5th day of February, 1891,
* * * which said trust deed was made to secure $700 and interest,
the real consideration of this instrument, have granted, bargained," etc.

This recital was explained in the answer to have been made at the
request of appellees, upon the representation that it was necessary to
show the release of the previous mortgage before the Trust Co. would
accept the note in question.

Appellees filed numerous exceptions· to appellant's answer, some of which were overruled and some sustained;—also replied by general and special denials of all fraud, but did not ask a recovery upon the original notes, in case they failed upon the one described in the petition.

A trial was had before a jury, which resulted in a verdict and judgment in favor of appellees for the full amount of the note, interest and attorney's fees.

I cannot agree with my brothers on the third conclusion of fact as found by them, that appellant's original note was made payable as each five miles of the grade was completed. There is equally as much and as satisfactory evidence tending to prove that the first note was payable as each five miles of the railroad was completed. The mortgage given to secure the note recites that such were the terms thereof. At all events this was one of the pivotal points in the case, and most sharply contested.

I cannot agree to the fourth conclusion of fact, that the proposition to grade the road from Henrietta to Archer City was carried out by the railroad company. The evidence is sharply contradictory on this point, as to what is a finished grade, and as to whether the grade stopped a half mile before reaching the corporate limits of Henrietta.

I cannot agree to the fifth conclusion of fact, that the amount paid by appellees for the grading of the road exceeded the value of the subsidies received by them. The evidence shows that appellees paid about $21,000, while the Henrietta subsidy alone was $30,000, and Mr. East refused to testify what the Archer subsidy, turned over to him, amounted to, and there is absolutely no evidence as to the value of the subsidies.

I cannot agree to the sixth conclusion of fact, that the sole consideration of the note and mortgage declared on was as specified in the mortgage. The evidence of defendant is positive that the consideration was not as expressed in the mortgage sued on, but as expressed in the original mortgage given to secure the debt in the first instance.

I cannot agree to the seventh conclusion of fact, that no fraudulent misrepresentations or promises whatever were made to appellant to obtain either the original notes or the note sued on, without usurping all the functions of the jury. This conclusion assumes as proven the very question in the case, when the evidence was sharply contradictory from beginning to end, and much evidence was excluded by the court that, as circumstances tending to throw light upon the acts and intentions of the appellees, I think, was competent and might have weighed much with an impartial jury. This, taken in connection with the erroneous charges given as hereinafter shown, and with the erroneous admission of a corrected and abandoned pleading filed in the case, all bearing directly upon this very question, could not fail to lead irresistibly to the verdict found by the jury, and to no other.

Nor can I agree with my brothers on the final conclusion of fact found by them, that "a contrary verdict on the issues involved in conclusions 6 and 7 would have been contrary to the manifest weight and great pre-

ponderance of the evidence." I find the evidence nearly equally balanced, and amply sufficient to sustain a verdict either way.

In the second paragraph of the court's charge, the jury was instructed that: "If you find and believe from the evidence that about the time of the execution of the note in controversy herein, W. H. Featherston, acting for himself and for the other plaintiffs, fraudulently represented to and promised the defendant that they had made arrangements with the Union Trust Co. to iron the Red River & Southwestern Railway from Henrietta, Texas, to Archer, Texas, and intended to and would build said railroad within a reasonable time, and that said representation was false and said promises broken, and that at the time of making such representations and promises said Featherston did so with the design of cheating and defrauding the defendant, and had no intention of performing said promises or having it done, but used them merely as false pretenses to induce the defendant to execute the note in controversy, and that defendant relied upon said representations and promises and was deceived thereby, and thereby induced to execute the note in controversy, then you will find for the defendant."

It will be observed that, both by the pleading and this charge, two kinds of misrepresentation are presented: 1. The representation of an existing fact, viz., they (appellees) had made arrangements with the Union Trust Co., etc.; 2. That appellees intended to and would build the road within a reasonable time. The charge, in order to invalidate the note, required that both of these representations should have been made "with the design of cheating and defrauding the defendant." My view of the law is, that if one by making an untrue statement of an existing fact induces another to believe and rely thereon to his prejudice, the transaction is fraudulent in law, whether the one making the statement so intended it or not. He has no right to avail himself of a contract obtained by his own untrue statement of a material matter, even though he may have himself honestly believed it to be true. Culberson v. Blanchard, 79 Texas, 492. That part of the charge, therefore, which required the statement that appellees had already made arrangements with the Union Trust Co. to have been made with fraudulent intent, was erroneous.

In the fourth paragraph of the court's charge, the jury were instructed that: "If you find and believe from the evidence that the note in controversy herein was given in renewal of two other notes theretofore given by the defendant to C. W. Easley, treasurer of the Red River & Southwestern Railway Co., and by said company transferred to plaintiffs, and in consideration of the cancellation of said two notes, then you will find for the plaintiffs, unless you find that said two notes were procured by fraud, under the fifth subdivision of this charge, and that defendant at the time of the execution of said note in controversy was ignorant of said fraud, if under the evidence and charge of the court you find such fraud."

It is now well settled that contracts of this character obtained by

specious and false representations and promises, whether made in relation to existing facts or in relation to matters and things to be performed in the future, are alike viewed with disfavor by courts of law as well as by courts of equity, and are fraudulent and voidable; and such fraudulent conduct may be relied upon to cancel contracts based upon or induced by such promises and representations, as well as urged as a defense in bar of the enforcement of contracts thus obtained. Henderson v. Railway, 17 Texas, 560; Greenwood v. Pierce, 58 Texas, 130; Railway v. Jones, 82 Texas, 156; Railway v. Titterington, 84 Texas, 218; Railway v. Pittman, 23 S. W. Rep., 318; s. c., 4 Texas Civ. App., 172; History Co. v. Flint, 15 S. W. Rep., 912; 2 Pom. Eq. Jur., sec. 877, and note 3; Abbott's Trial Ev., (1st ed.), 294, 787.

I called attention above to the fact that appellees did not seek a recovery upon the two original notes referred to in this charge. I am of opinion that, no matter how fair the original transaction may have been, no recovery could have been had in this case by appellees, if the note sued upon was obtained by fraud as alleged by appellant. I am also of opinion that the fact that this note may have been given in renewal of previous notes which were valid, would not prevent it from being invalidated upon the ground of fraud, if in fact the renewal was obtained by such means. In that case it would be necessary to aver the terms of the original notes and ask to recover thereon. The charge in question was therefore both erroneous and misleading.

I am also of opinion that the evidence excluded by the court, as shown in bills of exception Nos. 1, 4, 6, 7, 11, 12, 13, 14, 15, 16 and 19, was admissible as facts and circumstances tending to show, in a greater or less degree, the fraud and failure of consideration averred in the answer.

In defendant's "original answer," which set up total failure of consideration, as well as his "amended original answer,"- upon which he went to trial, and both of which were sworn to, as all pleas of failure of consideration are required to be, under art. 1265 of Rev. Stats. of Texas, he plead that the original note first given by him to the railway company was payable as each five miles of the "grade" (instead of railroad) was completed, until the same reached the west boundary line of Clay County, when all was to become due. This "original answer" was abandoned, and in lieu thereof the "amended original answer" was afterwards filed, in which it was alleged that the said first note executed by him was payable as each five miles of the railroad was completed, until the grade reached the west boundary line of Clay County, when all should be due.

This difference in the two pleadings touches a vital question in the case, and one of the very points in controversy, that is, whether the note given by defendant was payable as the grade or embankment was completed, or, as the road, with its trestles, culverts and bridges, ready for the ties and iron, was completed. A great deal of contradictory evidence was offered on each side, and the plaintiffs over the objections of de-

fendant were permitted to read in evidence to the jury the above allegation from the original answer.

This, I think, was material error. The original answer had been sworn to, and while the court permitted the defendant to explain that it was prepared hurriedly to prevent a judgment by default, and that he did not have the note itself nor the mortgage given to secure it, before him at the time, and also that he used the word "grade" to signify "road-bed," yet the evidence was strongly calculated to influence the jury, probably more than any other evidence before them.

Rule 12 for the government of District and County Courts provides: "An amendment may be made by either party, upon leave of the court for that purpose, or in vacation, as prescribed by the statute—the object of an amendment, as contradistinguished from a supplemental petition or answer, being to add something to, or withdraw something from, that which has been previously pleaded, so as to perfect that which is or may be deficient, or to correct that which has been incorrectly stated by the party making the amendment."

A portion of Rule 13 provides: "The party amending shall point out the instrument, with its date, sought to be amended   *   *   *   *   and amend such instrument by preparing and filing a substitute therefor entire and complete in itself."

Rule 14 provides: "Unless the substitute shall be set aside on exceptions for a departure in pleading, or on some other ground, the instrument for which it is substituted shall no longer be regarded as a part of the pleading in the record of the cause, unless some error of the court in deciding upon the necessity of the amendment, or otherwise in superseding it, be complained of, and exception be taken to the action of the court, or unless it be necessary to look to the superseded pleading upon a question of limitation."

These rules clearly indicate that the abandoned pleading is to be considered no longer any part of the record, unless for the purposes embraced in some of the exceptions given in Rule 14. So it is not competent as an admission of record.

Is it competent as an admission of any character? The fact that it is found in a pleading required by law to be sworn to, and which is sworn to, I think does not affect the question of its admissibility. It must be governed by the same rules of evidence that reject or admit admissions contained in abandoned pleadings not sworn to.

All pleadings setting up failure of consideration as a bar to recovery on any written contract are by our statute (art. 1265, sec. 10), required to be verified by affidavit.

The right to amend the pleadings proper in any case is not restricted to those not sworn to, but it applies equally to verified pleadings. No distinction is made by the rules above cited nor by our statutes.

Revised Statutes of Texas, art. 1192, provides: "The pleadings may be amended under leave of the court, upon such terms as the court may

prescribe, before the parties announce themselves ready for trial, and not thereafter."

The rule is clear and well settled that the pleadings of a party in another suit involving the same issues, upon which he had relied on the trial of such suit, and which had been sworn to by him, are competent evidence against him as solemn admissions. Buzard v. McAnulty, 77 Texas, 445, and cases there cited. Wheeler v. Styles, 28 Texas, 245.

But I do not think the same rule applies to an abandoned or corrected pleading. Coates v. Elliott, 23 Texas, 606; Medlin v. Wilkins, 1 Texas. Civ. App., 469; Railway v. Clark, 25 S. W. Rep., 504; Mecham v. McKay 37, Cal., 165; Ponce v. McElvy, 51 Cal., 222 (where the pleading was verified); Stern v. Loewenthal, 77 Cal., 340; Wheeler v. West, 71 Cal., 126; s. c., 11 Pac. Rep., 871; Holland v. Rogers, 33 Ark., 253; Kimball v. Bellows, 13 N. H., 58; 1 Greenl. on Ev., sec. 171, note a; Starkie on Ev. (10th ed.), 450, 640.

Mistakes are often made in pleadings, and the office of an amendment is to correct the mistake; but if such mistakes, after having been withdrawn and corrected, may be read in evidence against a party, the law allowing him to amend and correct his pleadings would be almost worthless, and the case would be tried, perhaps, not upon the truth and facts, but upon the mistakes made by the parties in formulating their issues, which may have been discovered to be such and corrected. Phillips v. Smith, 110 Mass., 61; Taft v. Fiske, 140 Mass., 250. It is his right to amend until he gets his pleadings correct and true, and when he has. done this the pleadings upon which he stands on the trial may be read as admissions of record against him, whether sworn to or not; but not his. mistakes made in his efforts to perfect his pleadings, as contained in papers abandoned by him, because, perhaps, of those very mistakes. One of the features of our system of pleading allows a defendant to plead and rely upon as many several matters, whether of law or fact, as he may think necessary for his defense, although they may be wholly inconsistent, provided they are filed at the same time and in due order of pleading. Rev. Stats., art. 1262; Welden v. Texas Meat Co., 65 Texas, 487.

In my opinion the fact, as in this case, that the party to the suit is a lawyer and drew the pleading himself and swore to it, would not change the rule. A lawyer is as much entitled to the privileges and protection granted by the rule as any other person, and is as liable to make mistakes as anybody else; and such mistakes in the preparation and perfecting of the pleadings in bringing the case to issue ought not to affect the trial of the case on its merits, or even be referred to before the jury. Coates. v. Elliott, 23 Texas, 606; Medlin v. Wilkens 1 Texas Civ. App., 469; Railway v. Clark, 25 S. W. Rep., 504; 1 Greenl. on Ev., sec. 171, note a; Starkie on Ev. (10th ed.), 450, 640.

The case of Boots v. Canine, 94 Ind., 410, is not well considered, nor is it supported by the authorities cited on this subject. The court in that case fails to draw the distinction between pleadings which were relied on

as final in other actions and the abandoned and corrected pleadings of the case being tried.

On page 414 of that opinion the court cited to sustain its views the case of Broadrup v. Woodman, 27 Ohio St., 553. In that case the pleading offered in evidence was the party's answer in another and different action.

It also cites Hobson v. Ogden, 16 Kan., 388. In that case Justice Brewer, in holding the evidence admissible, says it was a certified copy of a verified answer filed by the party in another previous action in another State.

It also cites Solomon Ry. Co. v. Jones, 30 Kan., 601, where the same distinguished Justice admits the evidence, because it was a certified copy of a verified pleading in a former and different case.

It also cites Ayers v. Hartford Ins. Co., 17 Iowa, 176. The pleading offered in evidence was a copy of the answer in another and different action.

It also cites Meade v. Black, 22 Wis., 241. The pleadings there offered were the complaint and answer in ejectment in another suit for the same land.

And the court was equally as unfortunate in the citation of the case of Cook v. Barr, 44 N. Y., 156, and these cases are the main ones relied on to sustain the decision in that case, and not a single one is in point.

Besides, that court seems to have been impressed with the necessity of explaining to the profession that the question was there "presented in a peculiar form." The court say: "The record shows that there had been issues formed and a trial had; that the appellants successfully relied upon their answers, and the case came to this court, and the judgment was reversed, but not upon the answers; and that after this reversal the original answers were superseded by amendment." Ib., 410. After stating that the evidence offered was an allegation in the original answers that the agreement to arbitrate was oral and not in writing, and that it was offered as an admission, to contradict the amended answers of defendants then relied on, averring that the agreement was in writing, the court then continues: "It will be observed that the answers had stood through one trial and through an appeal as statements of the appellant's defense, and that they had placed these pleadings before the trial and appellate courts as true statements of the facts of their case. We can perceive no reason why the answers did not, under these circumstances, constitute some evidence of the facts stated in them." Ib., 411.

On the same page the court continues: "We think the rule is correctly stated by Mr. Wharton, who says: 'It is proper to add at this place that the pleadings of a party in one suit may be used as evidence against him in another, not as estoppel, but as proof, open to rebuttal and explanation, that he admitted certain facts.' 1 Whart. Ev., sec. 838. This is what we rule here, the answer having been affirmed to be true for several years, and acted upon through one trial and one appeal, should be deemed evidence of admissions, but evidence open to explanation."

The cause before us is entirely different. The record here shows that the defendant Barrett prepared and filed his answer hurriedly to prevent a judgment by default, and without examining the record of the mortgage or seeing the note, which, he says, was in the possession of the adverse parties, he alleged that the original note was payable as each five miles of the "grade" was completed, but that soon afterwards, and before any trial was had, he examined the mortgage and found that he had made an incorrect statement, for the mortgage described the note as payable as each five miles of "railway" was completed, and he at once prepared and filed his amended answer, stating such to be the condition of the note, and thus corrected the mistake made in the original answer.

The court charged the jury, at the instance of the plaintiffs, "that by false or fraudulent misrepresentations, as used in the main charge, is meant the false or fraudulent misrepresentation of a material fact, and not merely a statement of opinion, judgment, probability or expectation." This charge, it will be seen from my views herein previously expressed, is erroneous, and not the law of this case, as many of the alleged false and fraudulent representations relied on by the defendant, though not all of them, were made with reference to things to transpire in the future, and I hold are, if proven, as complete a bar as if they had been made concerning a present ascertainable fact, provided they formed the consideration which induced defendant to enter into the contract.

In this case it is made to appear by a bill of exceptions that a stenographer was appointed by the court below at the instance of the plaintiffs (appellees), and that for this reason his fees were taxed against them. If this stenographer was appointed by the court, as required by art. 1295, Rev. Stats., I think his compensation should have been taxed against the losing party, as other costs in the case. Article 1296 provides: "Reasonable compensation, not to exceed twenty cents per hundred words, shall be allowed such stenographer, to be fixed by the court and taxed in the bill of costs." Article 1421 provides: "The successful party to a suit shall recover of his adversary all the costs expended or incurred therein, except where it is or may be otherwise provided by law." I think the expense of writing out the shorthand notes made by the stenographer is a part of the costs contemplated by the statute.

I think the judgment of the court below ought to be reversed, and the cause remanded.

Filed February 22, 1896.

OPINION OF SUPREME COURT.

R. R. GAINES, CHIEF JUSTICE.—W. H. Featherston and others recovered a judgment in the District Court against L. C. Barrett upon a promissory note, and obtained a decree directing a sale of a tract of land which had been mortgaged by defendant to secure the payment of the debt. The defendant appealed to the Court of Civil Appeals of the Sec-

ond District, where the judgment was affirmed. One of the justices of that court having dissented, the points of dissent have been certified to this court for our determination. With the aid of the opinion of the court and of the dissenting opinion, which ably present the two sides of the controversy, we have carefully considered the case, and have arrived at the result that we concur in the conclusions of the majority of the court upon the questions presented by the certificate of dissent, and are of opinion that the judgment should stand affirmed.

The opinion of the court is exhaustive and satisfactory, and renders any additional remarks from us unnecessary.

Our conclusions will be certified to the Court of Civil Appeals of the Second District.

*Affirmed.*