Giles **MILLER**, Appellant,

v.

Martha **CARLSON**, Appellee.

No. 7632.

Court of Civil Appeals of Texas.

Texarkana.

April 13, 1965.

Rehearing Denied May 4, 1965.

Dean Carlton, Don C. Alexander, Dallas, for appellant.

Roy P. Cookston, Dallas, for appellee.

FANNING, Justice.

Appellee Martha Carlson, a real estate broker, sued appellant Giles Miller for a 6% commission for negotiation of a $75,000.00 residential sale from Miller to Henry Stram. Appellee also sued Stram for negotiating a companion sales contract (amounting to an exchange of the residences of Miller and Stram, with Stram to pay certain differences) but settled with defendant Stram after the close of the testimony.

Special issues 1, 2, 4, and 7 and the jury's responses were as follows:

"SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that the Defendant (Miller) entered into a written agreement (Plaintiff's Exhibit No. 1) with Stram on or about Sept. 20, 1962 for the sale and purchase of the Miller

property at 3919 Beverly Drive, Highland Park, Texas?

"Answer 'Yes' or 'no'.

"ANSWER: *Yes.*

"If you have answered 'yes' to the preceding special issue, then you will then answer the following special issue; otherwise, you need not answer same.

"By the term 'negotiate' as used herein, is meant to arrange a sale or business transaction which may or may not be consu*mat*ed.

"SPECIAL ISSUE NO. 2

"Do you find from a preponderance of the evidence that the Plaintiff (Mrs. Carlson) negotiated the proposed sale, if any, inquired about in Special Issue No. 1?

"Answer 'Yes' or 'no'.

"ANSWER: *yes.*

"SPECIAL ISSUE NO. 4

"Do you find from a preponderance of the evidence that Stram and the Defendant (Miller) agreed to release each other from the agreement, if any, set forth in Plaintiff's Exhibit No. 1, if such you have found existed, prior to any performance provided for in said Plaintiff's Exhibit No. 1?

"Answer 'yes' or 'no'.

"ANSWER: *yes*

"SPECIAL ISSUE NO. 7

"Do you find from a preponderance of the evidence that there was a defect in the title to the Miller property as described in Plaintiff's Exhibit No. 1 on 20 September 1962?

"Answer 'yes' or 'no'.

"ANSWER: *no.*"

The trial court entered judgment for plaintiff-appellee against Miller for the $4500.00 commission sued for, plus court costs. Defendant-appellant Miller has appealed.

The written sales contract between Miller, as seller, and Stram, as purchaser, of Sept. 20, 1962, was apparently more or less a standard form of sales contract with certain additional provisions which were to the effect that: (1) purchaser Stram would obtain a $56,000.00 loan; (2) objections raised by the title company would be cured in 30 days and (3) the sale of Stram's home to Miller would be simultaneously completed.

Appellee's rights as a broker are spelled out in the following provision of the contract;

"Seller agrees to pay the undersigned agent a commission of six per cent (6%) of the sale price for negotiating the sale hereunder, and in the event of default by the Purchaser to pay to the agent a sum equal to the commission from the deposit receipted for above."

Appellant by its 1st, 2nd, 3rd and 4th points contends to the effect that the trial court erred in overruling appellant's motion for judgment n. o. v. and erred in rendering the judgment in question because the conditions of the contract failed and were not satisfied, and because the contract limited any recovery by appellee to purchaser Stram's deposit. Appellee in reply to such points by her counterpoints 1, 2, 3 and 4, contends to the effect that the trial court correctly awarded appellee judgment without regard to whether conditions relating to the right between vendor and purchaser were met because of the jury finding that said vendor and purchaser released each other from obligation on the contract before performance of either was required, and upon the further jury finding that appellee negotiated the contract and was entitled to her commission under the contract, and that the evidence does not establish that the three conditions referred

to were not met, and that appellant's failure to present such issue to the trial court constitutes a waiver of same, and further that the contract in issue did not limit the broker appellee to recovery of her commission out of the purchaser's deposit.

Mrs. Carlson was a duly licensed real estate broker. She testified that she had a written listing from Miller to sell his property and Miller's testimony confirms the fact that he had listing agreements with Mrs. Carlson for about a year prior to the contract in question. Mrs. Carlson testified to the effect that she had secured a $56,000.00 loan commitment for Stram, but that Stram did not apply for the loan. Stram gave a $2000.00 check for the purchase deposit payable to a title company, which check was not paid, however Stram testified to the effect that he had ample funds in Hillcrest Bank to pay the check, that he also had on hand at said time $5000.-00 in a building and loan association and that he was amply able to pay the check. It is clearly apparent from the record that Stram's conduct in not going forward with his contracts was acquiesced in by Miller, as there was testimony from Stram that Miller told him (on a date identified by Stram as approximately Sept. 27, 1962) that: "Well, primarily that he did not want me to buy a house that I didn't want to buy, and basically that is what it amounted to. He said that there was no obligation as far as he was concerned." (Emphasis added)

■ Defendant-appellant Giles Miller in paragraph XIII of his first amended original answer pled as follows:

"That before any breach of the instrument alleged to be a contract in Plaintiff's Petition herein it was mutually agreed by and between Defendant MILLER and Defendant STRAM that the said contract should be waived, abandoned and rescinded, and the same was then and there fully waived, abandoned and rescinded." (Emphasis added)

Although said pleading was later abandoned by defendant and therefore did not remain in the case as a formal judicial admission against Miller, the said pleading was offered in evidence by plaintiff-appellant and was admitted in evidence by the trial court over defendant Miller's objections. The pleading was clearly admissible in evidence as a statement or admission once seriously made by defendant Miller which was inconsistent with the position he was taking in the trial. In this connection see 2 McCormick and Ray, Texas Law of Evidence, Sec. 1146, wherein it was stated in part as follows:

"When a pleading is abandoned, superseded or amended it disappears from the record as a formal judicial admission and is, of course, no longer binding on the pleader in the sense that he is prevented from disputing the facts contained therein. But it still remains as a statement once seriously made by him. Thus, like any other utterance, if it is inconsistent with the party's present position it may be received in evidence as an admission under the principle of the present chapter." (Emphasis added)

Also in this connection see the following authorities: Long v. Knox, 155 Tex. 581, 291 S.W.2d 292 (1956); Houston, E. & W. T. Ry. Co. v. DeWalt, 96 Tex. 121, 70 S.W. 531 (1902); Barrett v. Featherstone, 89 Tex. 567, 36 S.W. 245 and 35 S. W. 11 (1896).

It is also clearly apparent from the record that Stram and Miller did not have the consent of Mrs. Carlson to mutually cancel and rescind their purchase contracts, and did not secure Mrs. Carlson's consent to waive or release her rights to collect broker's commissions from both Miller and Stram. The record also shows that the title company initially approved the title to Miller's property according to the field notes furnished by Miller to Mrs. Carlson to place in the contract. Later on, after the lawsuit was filed and after Miller and

Stram had mutually released each other from their contracts, the title company made objections to a 5-foot strip of Miller's property.

In 9 Tex.Jur.2d, Sec. 24, Brokers, it is stated in part as follows:

"Regardless of the nature of his interest in the property, the one who employs a broker to sell the property is liable for the broker's commission. *This is true even though he has no title to the property.* Thus, a husband employing a broker to find a purchaser for a homestead cannot escape liability for the commission by reason of his wife's refusal to sign a deed of conveyance." (Emphasis added).

In 9 Tex.Jur.2d, Sec. 48, Brokers, it is stated in part as follows:

"Generally the broker has fully performed under his listing agreement and is entitled to his commission when the owner enters into a contract of sale with the purchaser produced by the broker. No question as to the readiness, willingness, or ability of the purchaser is thereafter involved. By executing a contract with the purchaser produced by the broker, the seller accepts the purchaser as being ready, willing and able to buy on terms and conditions satisfactory to the seller. If the seller later decides that the purchaser is not satisfactory or decides that the contract does not contain terms that entitle him to enforce it, specifically, he is nevertheless obligated to pay what he has agreed to the broker who procured the purchaser's signature whether the contract is ever consummated or not."

In Elmen v. Winfield, Tex.Civ.App., 80 S.W.2d 343, writ dism. (1935), it was stated in part as follows:

"Nor can a broker be deprived of his commission by an agreement of cancellation or release made by the principal and the customer, unless the agreement is entered into at the broker's request or with his consent."

The case of Donahue v. Fuller, Tex.Civ. App., 5 S.W.2d 1037, n. w. h. (1928), cited with approval in Winkler v. Cox, Tex.Civ. App., 243 S.W.2d 248, n. w. h. (1951), is illustrative of the rights of the parties in the suit at bar. In the Donahue case the broker had *negotiated* an exchange of properties as the case at bar. Both parties refused or declined to consummate the exchange, each claiming a right to do so. In defining the broker's rights in such a situation, the court stated in part as follows:

"There is a very broad distinction between making or causing a sale to be made and negotiating a sale. In the latter case it means to discuss or arrange a sale or bargain; to arrange the preliminaries of a business transaction; the deliberation, discussion, or conference upon the terms of a proposed agreement; the act of settling or arranging the terms and conditions of a bargain, sale, or other business transaction. Black's Law Dictionary. The negotiations may never terminate in a sale. A sale is a contract by which for a consideration one party transfers to another an interest in property. It is an agreement by which one gives a thing for a price in current money and the other gives the price in order to have the thing itself.

\*   \*   \*   \*   \*   \*

"If an agent therefore is employed simply to make a sale, it is necessary in such case for the sale to be actually consummated to earn his commission; but, where the agent is only required to *negotiate* a sale to earn his commission, his commission is dependent upon the performance of that obligation, to the satisfaction of his principal, whether the sale is actually completed or not." (emphasis added).

■ Appellant Miller voluntarily signed the contract and accepted the terms of sale. The conditions by which Miller and Stram might escape liability between themselves would not deprive Mrs. Carlson of her broker's commission for negotiating the sales as Mrs. Carlson did everything that was required of her and the failure of Miller and Stram to fulfill their contracts with each other was not occasioned by any fault on the part of the broker, Mrs. Carlson. Mrs. Carlson brought the parties together, they signed the purchase contracts, and by doing so were satisfied that each of them were ready, willing and able purchasers. Mrs. Carlson testified that she secured a commitment for a $56,000.00 loan for purchaser Stram, and plaintiff's exhibit Nos. 3 and 4 show that the title company in January 1963 had passed the titles on Miller's and Stram's properties and was ready to close.

■ The fact that after the suit was brought the title company found a defect in title to a 5-foot strip of Miller's land would not defeat the broker's right to commission, since Miller contracted to sell the land described in the field notes appearing in the contract, and Miller would have been liable to the broker for her commission even if he had had no character of title to the property he contracted to sell. See the following authorities: Fritter v. Pendelton, Tex.Civ.App., 134 S.W. 1186, n. w. h. (1911); Nail v. Boothe, Tex.Civ. App., 265 S.W. 1051, n. w. h. (1924); 9 Tex.Jur.2d, Sec. 24, Brokers.

■ The contract in question does not contain any provision that the broker's commission is contingent upon the completion of the parties of the negotiated sale. The fact that the contract in question had conditions pertaining to obligations upon the part of the purchaser and seller would not deprive Mrs. Carlson, the broker of her commission since she procured and negotiated a legal and binding contract with which the parties were satisfied until shortly prior to the time they mutually released each other from their obligations under their contract, and prior to time for performance under their contracts, and without Mrs. Carlson's consent and without any waiver from her to insist upon her rights to collect commissions from both Stram and Miller. In this connection see Conklin v. Krakauer, 70 Tex. 735, 11 S. W. 117 (1886), wherein it was stated in part as follows:

"The evidence shows beyond question that a legal and binding contract to sell the lots was made, and that this was brought about through the agency of Conklin, and it forbids the conclusion that he did less than entitles him to compensation. A broker is entitled to compensation when he procures a purchaser with whom his principal is satisfied, and who actually contracts for the property at a price satisfactory to the owner."

■ There were pleadings to support the submission of special issue No. 4 (relating to the agreement between Miller and Stram to mutually release themselves from the obligation of the written contract in question prior to any performance provided for in said contract); there was ample evidence of probative force to support the submission of issue No. 4; there was sufficient evidence to support the submission of issue 4; there was ample evidence of probative force to support the jury's answer to special issue No. 4 and the evidence was sufficient to support the finding of the jury to issue No. 4. Furthermore, the record does not show any objections by Miller to the submission of special issue No. 4. Appellant's 5th, 6th, 7th and 8th points are overruled.

■ Appellee's recovery is not limited to the check deposit made by Stram under the contract in question and under the record in this case since Mrs. Carlson, the broker, was not a party to and did not agree to the release by Miller of Stram from the performance of his obligations

under the contract. In this connection see 9 Tex.Jur.2d, Brokers, Sec. 64, wherein it is stated in part as follows:

"Unless the broker is a party to the seller's cancellation of the agreement or release of the purchase, the cancellation or release does not deprive the prober (broker) of his commission. *Nor in such a case is recovery limited to a commission on the initial down payment.*" (Interpolation and emphasis added)

We hold that the trial court correctly rendered judgment for plaintiff-appellee against the defendant-appellant Miller for the 6% commission Miller agreed to pay Mrs. Carlson for negotiating the sale contract in question.

Appellant's 1st, 2d, 3rd and 4th points are overruled.

The judgment of the trial court is affirmed.