**TEXAS EMPLOYERS' INS. ASS'N v. MANNING.   (No. 1608.)**

Court of Civil Appeals of Texas.   Beaumont. Nov. 14, 1927.

Rehearing Denied Nov. 23, 1927.

1. **Appeal and error ☞1003—Where jury's finding is against overwhelming weight of evidence, court will not permit it to stand.**

Where jury's finding is clearly and unmistakably wrong and against overwhelming weight of evidence, appellate court will not permit it to stand.

2. **Master and servant ☞405(1)—Evidence held not to support finding that compromise settlement of employee's claim for injuries was induced by fraud.**

In suit by employee to set aside judgment of Industrial Accident Board refusing to reopen claim for compensation for injuries, evidence *held* not to support jury's finding that compromise settlement and agreement, whereby plaintiff accepted $100 in payment of claim, was induced by fraud of insurance company's physician.

3. **Master and servant ☞405(1)—Evidence held to support finding that employee executed settlement under mutual mistake of fact regarding extent of injuries.**

In suit by employee to set aside judgment of Industrial Accident Board refusing to reopen claim for compensation for injuries, evidence *held* sufficient to support jury's finding that there was mutual mistake of fact as to extent of plaintiff's injuries at time he entered into compromise settlement and agreement whereby he accepted $100 in satisfaction of claim.

4. **Trial ☞350(3)—Submitting issue regarding employee's weekly wages when injured held proper where evidence showed employee had been regularly employed at $4.50 per day for about two months when injured (Workmen's Compensation Act [Vernon's Ann. Civ. St. 1925, art. 8309, § 1, first subsec. 3]).**

Under Workmen's Compensation Act (Vernon's Ann. Civ. St. 1925, art. 8309, § 1, first subsec. 3), providing that where it is impracticable to compute average weekly wages because of shortness of time of employment, etc., it should be computed in any manner which may seem just and fair to both parties, court was authorized in submitting special issue regarding employee's average weekly wages at time of injury where evidence showed he had been working for employer less than two months at time of injury, and that employee had been earning $4.50 per day and had worked every day of week.

5. **Master and servant ☞405(6)—Evidence warranted finding that employee's average weekly wage at time of injury was $27 (Workmen's Compensation Act [Vernon's Ann. Civ. St. 1925, art. 8309, § 1, first subsec. 3]).**

In suit by employee to set aside judgment of Industrial Accident Board refusing to reopen claim for compensation for injuries, evidence warranted jury in finding that employee's average weekly wage at time of injury was $27, under Workmen's Compensation Act (Vernon's Ann. Civ. St. 1925, art. 8309, § 1, first subsec. 3).

Appeal from District Court, Orange County; V. H. Stark, Judge.

Suit by J. B. Manning against the Texas Employers' Insurance Association to set aside a decision and judgment of the Industrial Accident Board refusing to review and reopen claim for compensation.   From a

---

judgment for plaintiff, defendant appeals. Affirmed.

Morris, Sewell & Morris, of Houston, for appellant.

O. M. Lord, R. A. Wood, and Holland & Cousins, all of Beaumont, for appellee.

HIGHTOWER, C. J. This suit was filed by the appellee, J. B. Manning, in the district court of Orange county to set aside a decision and judgment of the Industrial Accident Board refusing to review and reopen a claim for compensation which appellee was asserting against appellant for injuries, which appellee claimed he had sustained on April 3, 1926, while an employee in the discharge of his duties for the Texas Pipe Line Company, in Orange county.

Appellee's petition alleged, in substance, that on April 3, 1926, he was an employee of the Texas Pipe Line Company, in Orange county, and was engaged, with other employees of that company, in excavating and loading iron pipe that was being taken up from an old pipe line; that about 3 p. m. of said date he and several of his fellow employees were attempting to take two joints of 8-inch pipe out of the ditch line, which was about 18 inches deep, and that in doing so appellee had one foot in the ditch and the other foot on the edge of the ditch, and that in so standing his legs were spraddled apart, and that an instrument or tool called a "jack" was being used in connection with the lifting of the pipe from the ditch, and that the iron pipe, which was resting on appellee's shoulder, in some manner slipped off of the jack, and that the weight of the same crushed appellee to the ground while his legs were spraddled apart, and that he was thereby seriously and permanently injured and totally and permanently incapacitated for further manual labor; that the great strain that he was subjected to when the iron pipe slipped off of the jack and crushed him to the ground in the position in which he was standing caused a fistula, or blind fistula, to develop in his rectum, and that on account of this injury he had become permanently and totally incapacitated.

He further alleged, in substance, that the Texas Pipe Line Company, his employer, was a subscriber under the Employers' Liability Act of this state (Vernon's Ann. Civ. St. 1925, arts. 8306–8309), and that appellant had issued to that company a policy of insurance under the Employers' Liability Act of this state, and that the policy was in full force and effect at the time of his injury; that he made application to appellant for compensation for his injury, which was refused, and that he thereupon employed Mr. Frank Vaughn, an attorney at law, to represent him in the collection of the compensation which he claimed was due him for his injury; that about the 18th of May, 1926, he executed a contract of compromise settlement and agreement with appellant, by the terms of which he agreed to accept $100 in full settlement and payment of all compensation that was due him for the injury sustained by him; that at the time he executed this compromise settlement and agreement, he did not know that he was seriously and permanently injured, but believed that his injury was only of a minor or trivial nature; that this belief on his part was caused by false and fraudulent representations on the part of appellant's physician and surgeon, Dr. H. A. Barr, of Beaumont who represented and stated to appellee that the injury sustained by him on April 3, 1926, was only of a trivial nature; that it was only a boil on his rectum, and that it was only of a temporary nature, and that he would soon be well of that injury; that as a matter of fact Dr. Barr, as the agent and physician and surgeon of appellant, well knew at the time he made such representation and statement to appellee as to the character and nature of his injury that such representation and statement was false, and that such representation and statement by Dr. Barr was made for the purpose of inducing appellee to compromise his claim against appellant for a trivial and insignificant sum of money; that but for such fraud practiced upon him by appellant's physician and surgeon, Dr. Barr, he would not have made such settlement.

Appellee further alleged, in substance, that if the compromise settlement and agreement by which he agreed to accept $100 as compensation for his injury was not procured by fraud, as before stated, that then it was the result of a mutual mistake of fact as to the extent of his injury, and that such compromise settlement and agreement was, therefore, not binding upon him. Appellee prayed for compensation for 401 weeks at the rate of $16.20 per week, which was 60 per cent. of his daily weekly wage, less the $100 that had been paid him by appellant when the compromise agreement and settlement was made, and that appellant be required to pay the same in a lump sum, stating the reasons therefor.

Appellant answered by general demurrer and general denial, and then specially pleaded in bar of appellee's suit the compromise settlement and agreement which was made and entered into on May 18, 1926, by the terms of which appellee agreed to accept and did accept and receive $100 in cash in full settlement and release of any claim for compensation that he had because of the injury claimed to have been sustained by him, which compromise settlement and agreement appellant alleged had been duly approved by the Industrial Accident Board of this state.

The case was tried with a jury, upon whose verdict judgment was rendered in favor of appellee for $5,429.58, with interest thereon at the rate of 6 per cent. per annum

until paid, and from that judgment this appeal is prosecuted.

In response to special issues submitted, the jury found (1) that the compromise settlement and agreement executed by Manning on May 18, 1926, was procured and caused to be signed by him by fraudulent representations as to the extent and character of the injuries suffered by him, made to him at the time by the agents and representatives of appellant; (2) that the compromise settlement and agreement executed by Manning, May 18, 1926, was made under a mistake of fact as to the extent and character of the injuries suffered by him, both in the mind of Manning and that of appellant, its agents and representatives; (3) that the injuries sustained by Manning totally and permanently incapacitated him from performing the usual task of a workman; (4) that the average weekly wage that was being earned by Manning at the time of his injury was $27 per week; and (5) that a failure of the insurance association to make a lump sum settlement with Manning would work a manifest hardship and injustice to him.

Appellant advances several propositions for reversal of the judgment. The first is, in substance, that the evidence adduced upon the trial was wholly insufficient to avoid the compromise settlement and agreement of May 18, 1926, either on the ground of fraud or mutual mistake, and that, therefore, the trial court erred in refusing to peremptorily instruct a verdict in its favor.

The facts upon which this judgment rests may be stated, substantially, as follows:

On April 3, 1926, appellee was employed by the Texas Pipe Line Company, and was engaged with other fellow employees in excavating and loading heavy iron pipe. About 3 p. m. on the afternoon of that day, while he was attempting, with others, to lift two joints of 8-inch iron pipe from the ditch, and while one foot was in the ditch and the other on the edge of the ditch, an instrument or implement called a "jack" slipped from under the iron pipe, and the weight of the pipe suddenly came down on appellee's shoulder, and he was crushed in a squatting or stooping position to the ground, with his legs spraddled apart. He did not work any more on the job, but remained on the pay roll of the Texas Pipe Line Company until the 14th of April, 1926, at which time he was directed by appellant, the insurance association, to go to Dr. Barr, its physician and surgeon in the city of Beaumont, for examination and treatment. Appellee went to Dr. Barr, who examined him, and appellee testified that Dr. Barr, after examining him, told him that the injury which he had received on the occasion in question was a minor one, that is, that it was only a boil on his rectum, and that it would be only a few days or a short while until he would not be troubled with it any more. He further testi-

fied that Dr. Barr, on the next day, upon further examination, told him that there was a slight tear in his rectum, but that this was also only a trivial and minor trouble, and that the injury would be over with in a short while. Appellee then further stated, in substance, that he, believing the statements and representations made to him by Dr. Barr that the injury which he had received was only of a minor or trivial nature, executed the written compromise agreement and settlement of May 18, 1926, but that at the time he did this, he did not understand that it was a settlement in full for any claim that he might have against appellant, but that he thought that he was agreeing to accept $100 for compensation that was already due him, and which had not been paid; that his attorney, Mr. Vaughn, who represented him in the compromise settlement and agreement, also was induced to believe by statements and representations made by Dr. Barr that Manning's injuries were only slight and trivial; and that if he and his attorney, Mr. Vaughn, had known at that time that his injuries were serious and permanent, and that he would thereby be totally incapacitated, he would not have executed the compromise settlement and agreement and would not have accepted the $100 in settlement of his claim.

Dr. Barr, who was a witness for appellant on the trial, admitted that he was the physician and surgeon of appellant in Beaumont, and that in that capacity he examined the appellee on the 14th and 15th days of April, 1926, and that on the first day he discovered only a boil on appellee's rectum as an injury that had been caused on the 3d of April, 1926, and that on the following day he again examined appellee and found that there was a slight laceration or tear of the rectum; that he so advised appellee at the time as to the extent of the injury received by him, but that he also told appellee, at the time of his examination of him, that he found that he was then suffering from an old trouble, that is, a fistula of the rectum, which was of long standing.

The evidence further shows without dispute that when the compromise settlement and agreement was made on May 18, 1926, there was attached to the instrument an affidavit of Dr. Barr for the consideration of the Industrial Accident Board, in which Dr. Barr stated, in substance, that in his examination of appellee, as before shown, he discovered a boil on his rectum and a slight tear thereof, and that in addition thereto he discovered that appellee at that time was suffering from a fistula of the rectum, which was of long standing. He further stated in this affidavit that because of this fistula of the rectum, which in Dr. Barr's opinion had become tuberculous, he was thereby wholly incapacitated as long as such condition should last; that he thought that an op-

eration would probably result in a cure of the fistula, but was not certain.

Dr. E. T. Miller testified, in substance, that appellee called upon him some time shortly after the compromise settlement and agreement had been made and executed, and after the same had been approved by the Industrial Accident Board, and requested Dr. Miller to make an examination of him for the reason that he, appellee, thought that his injuries were greater than he considered them at first; that he, Dr. Miller, examined appellee, and concluded that he was suffering from a fistula of the rectum of long standing, and that he was also probably suffering from a tuberculous infection in the region of this fistula, and also that in his opinion as a physician appellee was suffering from pulmonary tuberculosis or tuberculosis of the lungs. Dr. Miller further testified, however, that it was possible that this fistulous condition of the rectum as he found it might have been caused by the injury which appellee claimed to have been sustained on April 3, 1926, while lifting the pipe out of the ground, giving his reasons for such conclusion.

Another physician, Dr. Wilhite, who testified in the case, stated, in substance, that he had examined appellee on the day of the trial, and that he found him to be suffering with a fistula, or blind fistula, of the rectum, which was of long standing, in his opinion, and that, in the condition that appellee then was, he was permanently and totally incapacitated for manual labor. Dr. Wilhite, however, was of the opinion, and expressed it, that the fistulous condition of the rectum as he found it could not have been caused by the injury that appellee claimed to have sustained on April 3, 1926.

Appellee testified, in substance, that at the time of the claimed injury on April 3, 1926, he was about 32 years of age; that he had always up to that date been a strong and healthy man and able to do hard manual labor such as he was doing at the time of his claimed injury; that he had never had any boils or fistula or any other disease or affection in the region of his rectum; that about the time he applied to Dr. Miller for examination after the compromise settlement and agreement had been made, he then found out because of the great pain that he was suffering that he was seriously injured, and that for that reason he had sought the examination by Dr. Miller.

Appellee's wife was a witness on the trial and testified, in substance, that she and appellee were married about 1919, and that ever since their marriage appellee had been a strong and robust man and able to do the hardest kind of manual labor, and had done it, and that he had never suffered from any trouble of the rectum up to the time of his claimed injury.

A brother of appellee, B. R. Manning, testified, in substance, that he had worked with appellee for 4 or 5 years almost continuously previous to his claimed injury, and that appellee during that period of time was able to do and did do hard manual labor, and that he never suffered with any trouble of the rectum prior to the claimed injury.

Mr. F. H. Vaughn, the attorney who first represented appellee in this matter and sought to collect his claim for compensation, was a witness on the trial of this case, and testified, in substance, that he represented appellee as his attorney at the time the compromise settlement and agreement was made on May 18, 1926, and that he signed the agreement along with appellee, and that he did so because Dr. Barr told him, Mr. Vaughn, when he had gone to Dr. Barr for information about the matter, that the only injury that he found appellee to be suffering with was a boil on his rectum and a slight tear thereof, and that that was only of a temporary and trivial nature. Mr. Vaughn testified further, however, that Dr. Barr told him at that time that he found upon his examination of appellee that he was suffering from a fistula of the rectum which was of long standing. Mr. Vaughn then testified that it was upon the representations and statements of Dr. Barr as to the nature of the injury suffered by appellee that he recommended and accepted for appellee, as his attorney, the compromise settlement and agreement of May 18, 1926, by which appellee agreed to receive and did receive $100 from appellant as full compensation for the injury claimed to have been sustained by him. Mr. Vaughn did testify, however, that, if he had known at the time he advised appellee to accept the $100 that appellee was permanently and totally incapacitated, he would not have accepted the $100 as compensation in full for appellee.

We think the foregoing states, in substance, all the material testimony bearing upon the issue of fraud on the part of Dr. Barr, as claimed by appellee.

Now the jury found, in response to special issue No. 1, that Dr. Barr, of Beaumont, who was admittedly the physician and surgeon of appellant at the time he examined appellee, was guilty of fraudulent statements and misrepresentations as to the extent of appellee's injury, which caused and induced appellee to execute the compromise settlement and agreement on May 18, 1926. This finding is strenuously challenged by counsel for appellant in this court as being wholly without support in the evidence, and we do not hesitate to sustain this contention. It is our conclusion that when Dr. Barr's testimony is considered in connection with that of Dr. Miller, Dr. Wilhite, and of Mr. Vaughn himself, who was then attorney for appellee, that no fair and impartial mind can escape the conclusion that Dr. Barr did not falsely and fraudulently

represent, and did not state or represent at all to appellee, that he was not suffering at that time from a fistulous condition of the rectum. We have already shown that, in Dr. Barr's written affidavit that was attached to the compromise settlement and agreement, he expressly stated that he found upon his examination of appellee that he was suffering from a fistulous condition of the rectum of long standing, and he made the same statement to appellee's attorney when first called upon by him for information. We have shown, also, that Dr. Miller found what he thought to be this fistulous condition of long standing, and this was also found to be appellee's condition when he was examined by Dr. Wilhite. We are not unmindful of the rule that it is the province of a jury, when one is demanded, to determine questions of fact, and that it is not proper nor the practice in this state for trial judges or appellate judges to disturb a jury's verdict on an issue of fact where it has reasonable support in the evidence.

[1, 2] But when, as here, a jury's finding is so clearly and unmistakably wrong and against the overwhelming weight of the evidence, we cannot and will not permit it to stand. Not only would it be a failure to comply with our duty in setting aside an unsupported verdict of the jury to let their answer in this case to special issue No. 1 stand, but it would be unjust to a reputable and competent physician and surgeon of high standing, both as a citizen and physician and surgeon. We therefore sustain appellant's contention that the finding by the jury in this case that Dr. Barr was guilty of fraud, and that that fraud induced the execution of the compromise settlement and agreement above mentioned, is wholly without support in the evidence.

[3] As we have shown above, however, the jury also found that the compromise settlement and agreement pleaded in bar by appellant was the result of a mutual mistake of fact, and, if the state of the evidence was such as to justify the jury in making that finding, the court did not err in refusing appellant's peremptory instruction. Without repeating the testimony which we have already shown as bearing on the issue of fraudulent representations and deceit, we think that the same is sufficient to support the jury's finding that there was a mutual mistake of fact as to the extent of appellee's injuries at the time he entered into the compromise settlement and agreement on May 18, 1926, and at the time he received and accepted the $100 which was paid him in satisfaction of his claim. In other words, while all the physicians who testified in this case, as we have shown, were of the opinion that the fistulous condition of appellee's rectum, which had wholly incapacitated him as all of them agree, was not probably caused by the injury that he claims to

have received, yet in view of the positive testimony of appellee himself, his wife, and his brother, that up to that time he was a stout and healthy man and had no trouble whatever in the region of his rectum, the jury in our opinion, was warranted in concluding that the fistulous condition must have resulted from the severe strain and contusion of the muscles in the region of the rectum at the time appellee was crushed to the ground by the weight of the pipe that he was attempting to lift from the ditch. As we have shown, Dr. Miller stated expressly that a great strain upon the muscles of a man, when standing in the position that appellee claims to have been standing when he was injured, might produce the fistula from which he was suffering. We therefore overrule appellant's contention that the evidence was insufficient to warrant the finding that the compromise settlement and agreement above mentioned was the result of a mutual mistake of fact. It follows from this conclusion that the court was correct in refusing to peremptorily instruct the jury in favor of appellant.

Appellant's second contention for reversal of the judgment is reflected by the following proposition:

"The court erred in refusing the defendant's request for peremptory instruction, because the undisputed proof failed to show that the plaintiff had worked during substantially the whole year prior to his injury, and that there was no proof offered to show, or which tended to show the wages of employees of the same class, working substantially the whole of such immediately preceding year in the same or in a neighboring place; therefore, there was no legal proof of the amount of compensation plaintiff would be entitled to recover, if any."

Appellee, in answer to the above proposition, submits the following counterproposition:

"Where the injured employee did not work substantially the whole of the year immediately preceding the injury, and there is no proof that the same kind of work was done by any other employee in the same or similar employment in the same place, substantially the whole of the preceding year, then the proper measure of appellee's recovery is to be arrived at in any manner that may seem just and fair to both parties."

The facts in this case show that on April 3, 1926, the date on which appellee claims to have been injured, he had been employed by the Texas Pipe Line Company for a period of about 2 months, and there was no proof adduced upon the trial that the same kind of work that he was doing was done by any other employee in the same or similar employment in the same place, substantially the whole of the preceding year.

[4, 5] Article 8309, § 1, first subsec. 3, of the Workmen's Compensation Act of this state is as follows:

"When by reason of the shortness of the time of the employment of the employee, or other employee engaged in the same class of work in the manner and for the length of time specified in the above subsections 1 and 2, or other good and sufficient reasons, it is impracticable to compute the *average weekly wages* as above defined, it shall be computed by the board in any manner which may seem just and fair to both parties."

Special issue No. 6, submitted by the court to the jury, was as follows:

"What was the average weekly wages being earned by the plaintiff Manning at the time of his injury?"

To this issue the jury answered "$27." The record shows no request by counsel for appellant for any charge explanatory of special issue No. 6, nor did appellant's counsel ask any additional charge at all in connection with this issue, nor did counsel request the court to change the form of the issue in any manner. The only objection interposed to the issue as framed was because there was "no evidence which could enable the jury to determine in accordance with the method provided in the Employers' Liability Act what plaintiff's average weekly wage was, it being shown by the undisputed proof that plaintiff had been in the employ of the Texas Pipe Line Company less than 2 months at the time he sustained his injury." Nor do counsel make any complaint in this court, except that under the state of the facts in this case the court should have given to the jury appellant's peremptory instruction as requested.

The proof in this case is undisputed to the effect that appellee, at the time of his injury, was earning $4.50 per day, and that he worked every day of the week except Sunday, and sometimes on Sunday, for which he was paid overtime. We think that under the provision of section 3, art. 8309, supra, the trial court was authorized to submit to the jury special issue No. 6 as shown above, and in the state of the evidence adduced upon the trial, the jury was warranted in finding that appellee's average weekly wage at the time of his injury was $27. See, also, Texas Employers' Insurance Association v. Bateman (Tex. Civ. App.) 252 S. W. 341.

There is another contention by appellant, to the effect that the judgment in this case is excessive, at least to the extent of $215. There is no use in going into the details upon which this contention is made, and our conclusion is that after allowing appellee 60 per cent. of his average weekly wage, as found by the jury, which amount would be $16.20, and after allowing interest on the amount that he was entitled to recover, and after deducting the $100 that he had already received from appellant, he was entitled to judgment for the full amount awarded him, as shown above.

This disposes, in effect, of all contentions made by appellant, and it follows that the judgment should be affirmed, which has been ordered.