## SHELL PETROLEUM CORPORATION et al.
## v. BURNETT.
### No. 4537.

Court of Civil Appeals of Texas. Amarillo.
Feb. 10, 1936.

William McCraw, Atty. Gen., and Harry Pollard, Asst. Atty. Gen., for Railroad Commission of Texas.

R. H. Whilden and H. M. Kisten, both of Houston, for appellant Shell Petroleum Corporation.

J. C. Wilhoit, of Houston, and Powell, Wirtz, Rauhut & Gideon, of Austin, for appellant Tidewater Oil Co.

Rex G. Baker and R. E. Seagler, both of Houston, and Powell, Wirtz, Rauhut & Gideon, of Austin, for appellant Humble Oil & Refining Co.

Wynne & Wynne, of Longview, for appellee.

HALL, Chief Justice.

The appellee, Burnett, instituted this suit against the Railroad Commission, seeking to set aside an order of the commission denying him a permit to drill an oil and gas well on .175-acre tract of land located in Gregg county. He further seeks a permanent injunction against the commission, restraining it from interfering with the drilling of a well for oil and gas on said .175-acre tract, and from interfering with the production, saving, and marketing of oil or gas produced by him.

He alleges that he is the owner of a seven-eighths leasehold estate in said small tract of land, known as the G. W. Richey .175-acre tract, and that on the ——— day of ———, 1933, he applied for a permit to drill a well on said tract of land as an exception to rule 37. That on January 13, 1934, after due notice to adjoining leaseholders, a hearing was held before the chief supervisor of the Oil and Gas Division of the Railroad Commission, and upon the recommendation of said Supervisor the Railroad Commission, on said date, denied plaintiff a permit to drill said well. That at the time said application was made, and subsequent thereto, wells on adjoining property were draining oil from this tract. That such action on the part of the commission was arbitrary, unjust, unreasonable, discriminatory, and invalid, because by reason of his alleged ownership of said property he had a vested right to protect said property from drainage by drilling the well applied for as an offset to wells on adjoining tracts; because rule 37 was and is invalid due to discriminatory acts of the Railroad Commission subsequent to the promulgation of said rule and amendments thereto; because waste will result if he is not permitted to drill said well, and plaintiff's oil, by reason of said drainage, would be confiscated by wells on adjoining tracts.

He pleaded rule 37 and the amendments thereto.

The commission answered by general demurrer, general denial, and further alleged that a full hearing was held by the commission on the application of plaintiff for the well in controversy, at which hearing evidence was taken, the same being credible, competent evidence, and in all things sufficient to justify the entry of the order as entered; that the entry of any other or different order on the same evidence would have been unjustifiable and improper.

Humble Oil & Refining Company, Tidewater Oil Company, and Shell Petroleum Corporation intervened, assuming the status of defendants.

The Humble Oil & Refining Company demurred generally and specially, denied generally the allegations, and set up in its pleadings that it was the owner of a seven-eighths leasehold estate in and to a certain tract of land known as the W. W. Holland 201.63 acres in the M. Mosley and Thompson-Allen surveys in Gregg and Upshur counties, which tract adjoins on the north the tract on which plaintiff applied for permit to drill his well. This intervener also pleaded that it owned a seven-eighths oil and gas mineral leasehold in and to a certain tract containing approximately 70 acres, known as the J. H. Sheppard tract in the Thompson-Allen survey, which tract adjoins on the west intervener's Holland lease, the southeast corner of the said J. H. Sheppard lease being approximately 300 feet northwest of the north end of the strip on which plaintiff seeks authority to drill his well.

The Humble Oil & Refining Company also filed a cross-action, styling itself as cross-plaintiff, complaining of Burnett as cross-defendant, wherein it alleged its ownership of the leasehold of the tract referred to. It pleaded rule 37 and alleged that in 1920 G. W. Richey acquired the fee-simple title to a tract of land known as 61.6 acres in the Wm. Carlton survey in Gregg county; that the .175-acre tract involved in plaintiff's application is a part of said 61.6-acre tract, and that said 61.6-acre tract, of which the .175-acre strip is a part, is capable of being fully developed for oil and gas purposes by wells drilled on said 61.6-acre tract in compliance with the well-spacing rules of the Railroad Commission; that G. W. Richey was prohibited, by rule 37 and amendments thereto, from drilling any well on the .175-acre strip as a separate tract, in that said strip of land claimed by the plaintiff Burnett under a lease to him is approximately only 10 feet wide and no well could be located thereon in accordance with the provisions of rule 37 and amendments thereto; and that same constitutes a voluntary subdivision of a larger tract capable of being fully developed for oil and gas purposes as a whole. The intervener, as cross-plaintiff, further alleged that the drilling of a well on said .175-acre tract would result in waste; that if cross-defendant is permitted to drill a well thereon he will be permitted to produce far in excess of the quantity of oil and gas that is in place under said strip, and will be permitted to withdraw, through such well, vast quantities of oil and gas from said cross-plaintiff's adjoining leases, and from leases lying to the east and west of said strip, through drainage of oil and gas through the well on said strip; that cross-plaintiff will have to drill at least one offset well, possibly more, to protect its leases from drainage; that the cost of drilling an offset well will be approximately $15,000, which damage cross-plaintiff will sustain if cross-defendant is permitted to drill. It further alleges that on the hearing before the commission cross-plaintiff and other adjoining leaseholders who protested said application introduced evidence showing that neither Burnett nor Richey have or had a vested right to drill said strip as a separate tract of land if it is owned by Richey, and showing that the lands of Richey are fully developed and protected from drainage by wells already drilled thereon, further showing that said strip is so narrow that a well could not be drilled thereon without encroaching upon adjoining land which is under lease to Tidewater Oil Company and Shell Petroleum Corporation, and further showing that there is not sufficient recoverable oil underlying said strip to pay the cost of drilling a well thereon, and that the drilling of a well on said strip could be made profitable only by draining oil from neighboring lands on which Burnett claims no right, title, or interest. Cross-plaintiff further alleges that the order denying Burnett a permit to drill on said strip was in all things reasonable, just, and fair, and said order should be upheld by the trial court by judgment entered thereon, making final said order of the Railroad Commission denying the permit to drill a well on said strip. Cross-plaintiff prays that the order of the commission made in this suit be in all things affirmed and made final, and that judgment

be entered denying Burnett authority to drill a well on said strip or from producing oil or gas from his proposed location, or any location on said strip.

Tidewater Oil Company filed its plea in intervention, adopting the pleadings of the Humble Oil & Refining Company, and further alleging that it owns a seven-eighths leasehold estate in a tract of land containing approximately 114.36 acres of land lying to the west of and adjoining the strip. claimed to be owned by plaintiff, to wit, the .175-acre strip. The intervener Tidewater Oil Company pleads its claim of title to said .175-acre strip for the purpose of showing that a bona fide dispute exists as to the title between this intervener and plaintiff as to said strip, further stating that the Shell Petroleum Corporation likewise claims the oil and gas leasehold estate on said .175-acre strip if it is owned in fee by G. W. Richey, plaintiff's lessor. This intervener further pleads that plaintiff should be required to establish title to said .175-acre strip in a court of competent jurisdiction before he is granted a permit to drill a well thereon, and thereby force the drilling of numerous offset wells as herein alleged, the drilling and production of which wells will be wholly unnecessary in the event it should be determined that plaintiff does not own said strip. It further alleges that there was and is a bona fide dispute as to the title to said land, and this evidence was introduced at the hearing before the Railroad Commission. This intervener did not file a cross-action.

Intervener Shell Petroleum Corporation alleged that it owns a seven-eighths oil and gas leasehold estate in a tract of land to the east and south of the strip claimed by Burnett. After general and special exceptions and general denial, it is alleged that it owns and holds a seven-eighths mineral leasehold in a tract claimed by Burnett upon which he seeks a permit to drill. Plaintiff filed a supplemental petition, composed of exceptions and a general denial.

The interveners filed their first supplemental petition, consisting of general and special exceptions, and a general denial.

The case was tried on its merits by the court without a jury, resulting in a judgment overruling the demurrers, both general and special, of all parties, and perpetually enjoining the defendants, and each of them, their agents, employees, and representatives, from in any wise interfering with the drilling of one well upon the said .175-acre tract, and further enjoining the defendants from interfering with the production, saving, and marketing of oil or gas produced from said tract, and decreeing that the order of the Railroad Commission, refusing the plaintiff a permit to drill, be set aside and declared of no force and effect. The judgment further grants plaintiff authority to drill his well on his strip of land 100 feet north of the south boundary line of said tract, and in the center of said tract.

From this judgment all of the defendants, together with the Railroad Commission, have appealed.

■■ The first complaint is that the trial court erred in overruling the general demurrer of the defendant and interveners, (1) because plaintiff failed to allege that the Railroad Commission of Texas exceeded its statutory authority or power in making the order complained of; (2) because the petition does not allege that there was no substantial evidence adduced on the hearing of application of plaintiff before the Railroad Commission of Texas in support of its order denying the permit; (3) because the petition does not allege that the order of the commission was so arbitrary, under the specific allegations made in the petition, as to be beyond the exercise of reasonable judgment and discretion vested by the statutes of the state in the commission to deny the permit; (4) because the petition nowhere negatives that the drilling of the well would create an unnecessary fire hazard, and that the commission had sufficient evidence upon which to base its order denying said permit; (5) because petition does not allege that the lease alleged to be owned by plaintiff is not and was not a voluntary subdivision of a larger tract of land capable of development as a whole; (6) because the order denying the permit was unjust, unreasonable, or discriminatory; (7) because there was no evidence showing, or tending to show, that the commission exceeded its statutory authority or power in making the order.

These objections to the petition, with one and possibly two exceptions, are without merit. Allegations that the commission exceeded its statutory authority, that there was no substantial evidence to support the order, that the order was so arbitrary as to be beyond the exercise of reasonable judgment and discretion, and the other objections, would have been merely statements of the pleader's conclusions.

The rule is stated in the case of Railroad Commission of Texas v. Shupee (Tex.Civ. App.) 57 S.W.(2d) 295; Shupee v. Railroad Comm. of Texas, 123 Tex. 521, 73 S.W.(2d) 505, that the plaintiff must allege in his petition on appeal the specific fact or facts on which he relied to show that in denying his certificate the commission either transcended its statutory authority or promulgated rules, or that there was no evidence adduced to support the order, or that the commission abused its discriminatory power and authority, thereby rendering the order or decision complained of unreasonable and unjust as to him. The court does not hold that the plaintiff must allege the conclusions to be deduced from the facts, but simply holds that the petition must state specific facts which would show the results and conclusions stated. We think, however, that the plaintiff should have, by his allegations, negatived that the alleged lease, which he claims to own, is not and was not a voluntary subdivision of a larger tract of land capable of development as a whole, and without this allegation the petition was fatally defective.

It is held in Railroad Commission of Texas v. Inter-City' Forwarding Co. (Tex.Civ. App.) 57 S.W.(2d) 290, that it was necessary for the petition on appeal from the order of the commission, praying for an injunction, to contain allegations of such specific facts and circumstances as would, if true, authorize the court to adjudge as a matter of law that the statute under which the commission acted was unconstitutional, or that the commission exceeded its statutory authority or power in making the order, and that there was no substantial evidence introduced on the hearing of the application for the permit before the commission to support its order denying the permit, or that the order was so arbitrary under the specific facts as to be beyond the exercise of reasonable judgment and discretion.

Admitting that the allegations in the petition are sufficient to meet these requirements, still it fails to negative the supposable fact that the 175-acre tract was not the result of a voluntary subdivision illegally made.

Amended rule 37, adopted May 29, 1934, by the commission, provides: "No subdivision of property made subsequent to the adoption of the original spacing rule will be considered in determining whether or not any property is being confiscated within the terms of such spacing rule, and no subdivision of property will be regarded in applying such spacing rule, or in determining the matter of confiscation if said subdivision took place subsequent to the promulgation and adoption of the original spacing rule."

In the case of Sun Oil Co. v. Railroad Commission of Texas (Tex.Civ.App.) 68 S.W.(2d) 609, 612, the Third Court of Appeals said: "No owner of lands which can be developed as a whole under the conservation laws of the state and the valid rules of the Railroad Commission in force at the time he undertakes to do so can by his voluntary acts divide same into small tracts by severance of the minerals, lease, or otherwise, and thus create in himself, or in any assignee or vendee under him, any vested right to any exception to the conservation rules of the commission which would enable him to circumvent the conservation laws and valid rules of the commission designed to make such laws effective. Such owner, whether of the leasehold, the minerals, or the fee, must contract in consonance with such laws and rules and subject to their provisions. Otherwise he is entitled to no exceptions to, nor relief from, the burdens they impose."

■ As said by Judge Sharp in Harding v. W. L. Pearson & Co. (Tex.Com.App.) 48 S.W.(2d) 964, 966(7): "The rule is settled in this state that a petition for injunction must clearly and distinctly state all the material and essential elements entitling the party to relief, and negativing every reasonable inference arising upon the facts so stated, that the party might not, under other pertinent supposable facts, be entitled to relief." Citing numerous authorities. See, also, 24 Tex.Jur. 222; 36 C.J. 322, § 532.

The fact that the contention is made by defendant and interveners that the strip of land in controversy is a subdivision of the 61.6-acre tract known as the Richey tract, and that it was divided originally by an old fence which has been adopted as a division line between said 61.6-acre tract and the .175-acre tract, and the further fact that the title to the strip is in dispute, show the necessity of enforcing the rule announced by Judge Sharp in the Harding Case, supra.

■ Since the court should have sustained the demurrer to the petition, the judgment will have to be reversed, and the proper disposition to make of the case is to remand it in order that the plaintiff may

have an opportunity of amending. Security Union Casualty 'Co. v. M. & V. Tank Co. (Tex.Civ.App.) 295 S.W. 292; International Bridge & Tramway Co. v. McLane, 8 Tex.Civ.App. 665, 28 S.W. 454; Gerhart v. Harris County (Tex.Civ.App.) 244 S.W. 1103, affirmed 115 Tex. 449, 283 S.W. 139.

Reversed and remanded.