KENNEDY v. TEXAS EMPLOYERS
INS. ASS'N.

No. 12462.

Court of Civil Appeals of Texas. Dallas.
Oct. 8, 1938.

Rehearing Denied Nov. 5, 1938.

D. B. Eades, Allen Eades, and Eric Eades, Jr., all of Dallas, for appellant.

Lawther & Cramer, of Dallas, for appellee.

YOUNG, Justice.

As plaintiff in the trial court, appellant sued to set aside a compromise settlement, wherein he was paid $150 by appellee, with the approval of the Industrial Accident Board. The suit was grounded upon allegations of fraudulent statements of appellee's representatives, inducing the settlement, and upon close of the testimony in a jury trial a verdict was instructed for appellee, whereupon proper steps were taken to effect this appeal.

Plaintiff's trial pleadings in the main sufficiently stated a cause of action; defendant's answer being a general demurrer, denial and plea of res adjudicata, by reason of the aforesaid settlement agreement. Testimony in support of plaintiff's case was

to the effect that, on March 13, 1935, while in the employ of the Dallas Power & Light Company, he sustained total and permanent back injuries while attempting to lift a 200-pound manhole cover; such alleged disability placing him at once under medical observation and treatment, but not resulting in full cessation from the duties of his employment until the early part of July following.

Appellant testified that, prior to the date of his alleged injury, he had been employed with the Light Company more than ten years, with no previous back pains or trouble in such region, his lay-offs during this entire period being for a day or so, occasioned by slight indispositions, such as a common cold; that he was off from work several days after his said accident on March 13th, returning and continuing to work until July 1935, but that the pain and misery in his back, hips and sides, were continuous and severe. In the beginning he had medical attention from a physician of the appellee Insurance Company, but no examination or X-ray from such source until after he had ceased to work, and shortly before the execution of the settlement instruments Mr. Perry Davis, personnel and claim director for the Light Company, was also a representative of appellee in procuring the execution by appellant of the compromise agreement, which is here sought to be avoided. It will be necessary to set forth the agreement in question and excerpts from the testimony of plaintiff relative thereto:

"State of Texas, County of Dallas

"Before me, the undersigned authority, this day appeared W. W. Kennedy, personally known to me and after having been duly sworn on oath deposes and states:

"My name is W. W Kennedy and I live at Rt. 3—Box 453 Street, in Dallas, Texas. On or about March 13, 1935, I was married. 35 years of age and employed by the Dallas Power and Light Company at a wage of $4.80 per day working five days a week as a foreman. On said date I claim, while in the course of my employment, I was injured in Dallas County, Texas, because of an accident which happened as follows: 'I claim that while I was bailing some water from a manhole I noticed a sharp pain in my left side above my groin, but as the result of this I claim I did not start losing any time until July 5, 1935 at which time I returned to a doctor.'

"I understand that the Texas Employers' Insurance Association contends that the condition from which I am suffering at this time and also the condition from which I have been suffering since March 13, 1935, is not due to any injury but is due to an arthritis involving my back, and therefore, in view of the facts as to the time, place, and nature of my injury, I understand the Texas Employers' Insurance Association states that I am not covered under the terms of their policy nor under the provisions of the Workmen's Compensation Law.

"I am familiar with all the facts involved in my claim but if I am mistaken in this I confess that I have had a reasonable opportunity to determine and ascertain such facts independent of any knowledge of such facts possessed by the Texas Employers' Insurance Association or any of its agents or representatives. I am relying upon my own knowledge of my condition and not upon any opinion of any doctor or doctors representing the said Texas Employers' Insurance Association with reference to the extent and duration of my injury or the disability resulting either directly or indirectly from the accident which I claim.

"In consideration of the foregoing I have agreed to compromise and settle my claim for the sum of $150.00. I am entering into this settlement of my own free will and accord for the purpose of liquidating and settling forever any and all claims that I now have or may hereafter have by reason of this or any other injury I have sustained prior to the date of this settlement. I understand that my condition may change to my benefit or to my detriment in the future and that this forms a part of the consideration for this settlement. I further understand that I am to be responsible for any medical expense in connection with my alleged injury from the date of this settlement.

"W. W. Kennedy, Claimant."

"Sworn and subscribed to before me this 23rd day of July A. D. 1935.

"May Strother, Notary Public in and for Dallas County, Texas."

Plaintiff Kennedy testified in this connection that "This affidavit of July 23rd, 1935, was read by me or read to me, I remember Miss Strother, a notary, was sent for. She came in and I signed it there at that time and she swore me to it and

signed it. That affidavit set out the facts as I thought they were at that time; that was what I was relying on. * * * Mr. Davis had not gone over the facts with me before the instrument was drawn up. When I told him I did not want to settle at that time, he told me to go on and think about it. He did not read it to me at that time; he just told me he had it there, told me what he had, and if I wanted to sign it all right and if not to go on and think about it. It was my thought at that time that it was the contention of the Texas Employers' Insurance Association that the condition from which I was suffering at that time and also the condition from which I had been suffering since March, 1935, was not due to any injury but was due to arthritis in my back."; and stated further on re-direct examination that "At the time I signed this statement, on July 23rd, 1935, Mr. Perry Davis told me that I was suffering from an arthritic condition which was caused by my teeth, and he is the only one, so far as I know, that had any connection with the Dallas Power and Light Company, or the Texas Employers' Insurance Association that made those representations; he made those himself."

Previous to the time of the above compromise agreement and between July 5th and 8th, the said Mr. Davis had conducted plaintiff to the Dr. Samuell Clinic, where he was subjected to an extended and thorough examination (including X-rays of back and teeth) by Drs. Thomasson and Musick, and presumably at the expense of appellee company. The X-rays were examined apart from plaintiff, according to his testimony, and as he left the office with Mr. Davis, the latter repeated to plaintiff a statement concerning his physical condition that had just been made by Dr. Thomasson, that "You won't be able to work any more—your back—you are liable to tie your shoe string or something or stumble just the least bit, and you will have the same as a broken back."

Later, plaintiff testified, he was called to the office of Mr. Davis, who had in hand the medical reports as to the findings of the doctors following the above examination, which plaintiff did not see; that Mr. Davis there told him (appellant) his impaired condition of health was not due to an injury, but was an arthritis, centering in his back and caused by his teeth; advising plaintiff that he was not entitled to compensation insurance on account of the nature of his trouble, suggesting that all teeth should be pulled, a new set inserted, and that plaintiff should settle his claim for $150—the cost of such dentistry. The further testimony of plaintiff was in substance that, at the time of the settlement, he had no knowledge of the cause of the trouble in his back, except the information imparted to him by Mr. Davis and the results of the medical examinations at the Samuell Clinic; further that he relied on the statements of Mr. Davis and otherwise would not have signed the above agreement.

It is appellee's contention that, after the above mentioned visit to the Samuell Clinic, examination and report, concluding with the conversation with Mr. Davis, that plaintiff went to doctors of his own selection, who examined him and advised him as to his back trouble, and the condition of his teeth; and that the settlement which followed was based on these independent findings, as well as on his own judgment as to the cause of his infirmity. While the testimony is well susceptible of this construction, yet there was evidence to the jury that plaintiff's visit to his own doctor (Fry) was before the time of the thorough diagnosis at the Samuell Clinic; and though Dr. Fry, prior to the settlement, took some X-ray pictures, plaintiff was not advised from this source of the cause of his pains; that he left Dr. Fry's office before such pictures were developed, and had no advice that the alleged injury had any connection with his lifting the manhole cover until September, when he was examined by Dr. Powell. Plaintiff's visit to Dr. Jordan, a dentist, before the compromise, according to his testimony, related solely to the state of his teeth and their extraction, involving no examination of his back. The removal of plaintiff's teeth by another dentist of his own selection began before he received the check from the Insurance Company, Kennedy's testimony being that he got no relief whatever from the operation, and in September and October, through independent examinations, he was advised that the back trouble was directly attributable to lifting the manhole cover the preceding March 13th, while engaged in the duties of his employment, and that such condition was probably total and permanent.

We have been dealing with evidence before the jury most favorable to plaintiff's cause of action, as it is our duty to do upon the granting of a peremptory

instruction. Blake v. Pure Oil Co., 128 Tex. 536, 100 S.W.2d 1009; Vernon's Ann. Civ.St. art. 2185, vol. 6, page 181, subd. 4, heading "Sufficiency of evidence to take case to jury." Appellee's main counter proposition, in support of such directed verdict, is that the evidence was wholly insufficient to raise an issue of actionable fraud. We think from a careful study of the record a fact question was presented in the transactions leading up to the settlement agreement as to whether plaintiff sustained an injury in the course of his employment which directly resulted in disability; or whether his trouble was due solely to an arthritic back, caused by a diseased condition of plaintiff's teeth. Consequently, the positive testimony of Kennedy that "At the time I signed this instrument on July 23rd, and at all times previous thereto, I relied upon the statements and representations made to me by Mr. Perry Davis that my teeth were causing my trouble. If it had not been for those statements, I would not have signed that instrument. At the time I signed that statement, I had no knowledge of what was causing my trouble in my back except the knowledge imported to me by Mr. Perry Davis and the doctors of the Samuell Clinic," was a sufficient predicate for a determination by the jury of the existence of legal fraud. The statements of Mr. Perry Davis about which plaintiff testified may have been innocently made and believed by such agent of appellee, yet the jury question remained as to whether same were true or not, as well as to the existence of the other necessary elements of material misrepresentation. "The fact that the statement made was not intentionally false does not affect the right of the releasor to have the contract set aside if he was misled by the statement." 36 Tex.Jur. (Release) page 809, sec. 13. Nor does the record support appellee's contention that plaintiff relied upon his own investigation, rather than the alleged statements of Mr. Davis in signing the instruments of settlement. "It is not necessary, in order to avoid a contract on the ground of fraud, that such fraud should have been the sole cause of making the same. It is sufficient if the fraudulent representation is relied upon to the extent that it was a material factor in inducing the making of the contract, and without which the same would not have been made." Hart-Parr Co. v. Krizan & Maler, Tex.Civ.App., 212 S.W. 835, 837. See

Maniatis v. Texas Mut. Life Ins. Co., Tex. Civ.App., Waco Court, 90 S.W.2d 936, 937, from which we quote: "Neither does the fact that appellee undertook to make an independent investigation defeat its right as a matter of law to rely on the alleged false representations, and this is especially true where the investigation failed to disclose the falsity of the representations or any suspicious circumstances concerning the same."

Appellee's remaining counter propositions urged that appellant is precluded from a recovery and the peremptory instruction as given was proper because of (a) failure to file a claim for compensation with the Industrial Accident Board within six months after the alleged injury, or to file such claim for compensation before institution of suit or before the trial; and (b) failure to tender back the consideration for the agreement—that is the $150 that was paid thereunder following the settlement of July 23, 1935. In considering appellee's contention under (a) above of appellant's failure to file claim with the Board at Austin within six months, or good cause as to same, we find that notice of said accident was given by appellee to the Board at the time of said occurrence (March 13, 1935); that after a day or so Kennedy returned to work, continuing until July when the compromise was initiated and completed. This instrument, of date July 23, 1935, recites in part: "Whereas, on the 13th day of March 1935, W. W. Kennedy sustained injury while employed by Dallas Power & Light Company * * *", and that "No compensation has been paid on the claim to date. The Association contends that the condition from which the claimant is suffering at this time and also has been suffering since the date of the alleged injury is not due to any injury, and therefore, there is a question as to liability as well as extent of injury." It will be noted that the agreement of settlement, as made between the parties, was within six months from date of his alleged injury. Appellee insists that the failure to file claim within the statutory period, or as to good cause for such omission, is fatal to his cause of action under Erickson v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 105 S.W.2d 459. The facts of the case just cited are quite dissimilar, we think, to the case at bar; and that, under the principle of Central Surety & Ins. Corporation v. McCowan, Tex.Civ.App., 93 S.W.2d 472,

the statutory requirements relating to filing of claim before the Board in the instant case have been met. The court in the latter case said [page 475]: "It is undisputed that the Industrial Accident Board took cognizance of appellee's claim within six months after his injury by approving the settlement agreement sought to be set aside in this suit." See, also, Casualty Reciprocal Exchange v. Berry, Tex.Civ.App., 90 S.W.2d 595, announcing the same rule. Moreover, we believe the filing by appellant of a claim for compensation with the Board after the six months' period, immediately following his discovery of an alleged real injury, or at any time prior to the institution of suit, would have served no useful purpose. The compromise judgment was still outstanding on the records of the Industrial Accident Board, and the latter body had no jurisdiction to entertain a claim for further compensation until the compromise was set aside; neither did the Board have jurisdiction of the application to annul such final order, the courts being the exclusive forum for the determination of such matters. See Commercial Casualty Ins. Co. v. Hilton, 126 Tex. 497, 87 S.W.2d 1081, 89 S.W.2d 1116, where the court held in part [page 1083]:

"Until the compromise settlement agreement is set aside by the court, the Industrial Accident Board is without power to pass upon a claim for compensation, and its order declining to pass on such claim until such agreement has been set aside is not an order denying compensation. It cannot deny compensation when it has no jurisdiction to pass on that question."

We conclude, however, there is merit to appellee's counter proposition that a prerequisite to the cancellation of the compromise settlement agreement in question is a tender-back of the consideration received, placing the other party in statu quo, or pleadings containing allegations excusing plaintiff from such duty. The proof discloses no tender, nor do appellant's pleadings make allegations with reference thereto. Contained therein are pleadings in the alternative for a judgment against appellee in the amount of a presumed lump-sum award, as for total and permanent disability arising from the aforesaid injuries, less credit for the $150 already paid. Such alternative allegations constitute superfluous pleadings, we think, under the direct pronouncement of the Hilton Case, supra,

and are not appropriate matters for consideration in a suit to set aside a compromise settlement of the Industrial Accident Board on grounds of fraud. Upon a retrial plaintiff should conform his allegations and proof, as to the issue of tender, with the principles of the adjudicated cases, as set forth in 7 Tex.Jur. (Cancellation) p. 985, sec. 62: "In accordance with the rules of substantive law hereinbefore considered, the complainant should allege that the consideration has been restored, or incorporate an offer to restore it and to do equity. Tender before suit should be alleged where that is a necessary condition precedent, or an excuse for failure to make such a tender should appear.". See Casualty Reciprocal Exchange v. Bryan, Tex.Civ.App., 101 S.W. 2d 895, where Chief Justice Leslie of the Eastland Court exhaustively discusses this particular law point in a case substantially similar to this. The case just mentioned cites other Texas decisions that may be useful to appellant in meeting these equitable requirements inasmuch as plaintiff's testimony tends to question the benefits received from the $150 settlement, prior to a discovery of the alleged fraud.

We think the defects just discussed in the matter of tender are insufficient support for the peremptory action of the trial court; the same being rather a matter of material amendment of pleading on retrial, following the principle of Camden Fire Ins. Co. v. Yarbrough, Tex.Com.App., 215 S.W. 842, 844: "Where, upon reversal of a case, it seems probable that the ends of justice may be better subserved by remanding than by rendering judgment, the former course should be pursued, notwithstanding it is apparent that a full consideration of the case necessitates that the pleadings be amended".

For reasons herein stated, the judgment of the trial court, following peremptory instruction for appellee, is reversed and this cause remanded for another trial.

Reversed and remanded.

BOND, Chief Justice (dissenting).

The question involved in this appeal is, whether or not the trial court was warranted in giving an instructed verdict in favor of appellee, accordingly entering judgment against appellant. It is settled law in this State, and the observations here made will be weighed in the balance, that it is only where there is an entire absence

of testimony as to show allegation in plaintiff's petition necessary to a recovery, or where the facts proven leave no room for ordinary minds to differ as to the conclusion to be drawn therefrom, that a court should peremptorily instruct the jury.

Appellant, by pleadings and evidence, bases his right to set aside the compromised settlement agreement in this case on the sole ground that appellee's agent, Perry Davis, by "false, fraudulent, and deceitful representations" induced him to make the settlement agreement. On this basis, appellant testified that "at the time I signed this statement, on July 23, 1935, Mr. Perry Davis told me that I was suffering from an arthritic condition which was caused by my teeth, and he is the only one, so far as I know, that had any connection with the Dallas Power and Light Company, or the Texas Employers' Insurance Association that made those representations; he made those himself." Prefacing that statement, appellant said: "I saw Mr. Davis when I got to the office and he had the report from the doctor; he says, 'I got your report from the clinic' and, he says, 'everything is negative but your teeth,' he says, 'that is the only thing, they say, that is what is the matter with you * * *'; he said, 'well, if they were mine I would get everyone of them pulled out as soon as I could.'" On the above statements alone, appellant hinges his suit to avoid the written compromise settlement agreement, which was approved by the Texas Industrial Accident Board.

It is uncontroverted that the Samuell Clinic, to which appellant was sent by appellee's agent, made a physical examination of him and reported its findings and conclusions to Mr. Davis; and, there is no contention made, either in pleadings or proof, that Mr. Davis made false statements as to the report and the findings of the Samuell Clinic. Mr. Davis was not a physician, made no physical examination of appellant and was not possessed of any superior knowledge of the cause of appellant's aches and pains. The only information Mr. Davis had as to appellant's condition was the report of the Samuell Clinic, and in conversation with appellant he related merely the report as given to him. Mr. Davis testified, and there is not a centiliter of testimony to the contrary, that he talked to Dr. Musick, a dentist of the Samuell Clinic, and Dr. Musick said to him "that he thought the trouble was due to his teeth" and, he said, "I passed that information on to Mr. Kennedy, and I was convinced, in my own mind, that was true." He further testified: "I also talked to Dr. A. R. Thomasson (a physician on the staff of the Samuell Clinic) and he told me the trouble was due to his teeth, and I also passed that information on to Mr. Kennedy."

To be guilty of fraud, inducing a compromised settlement of a claim under the Workmen's Compensation laws of this State, Vernon's Ann.Civ.St. art. 8306 et seq., it is universally held that it is necessary to show first, that the party guilty of the fraud knew or should have known that his representations were untrue, and that the plaintiff believed and relied upon such false representations to his injury. Under the related facts of this case, how can it be said that Perry Davis perpetrated a fraud upon appellant, when he truthfully related what the Samuell Clinic had reported to him; and, from that information, extended advice as to what to do and when to do it? The question, I think, suggests the answer. There can be no fraud or deceit, where the statements relate truths. There are neither pleadings or proof that the Samuell Clinic was guilty of fraud or that there was a mutual mistake in diagnosing the cause of appellant's pains.

In Texas Employers Ins. Ass'n v. Watkins, Tex.Civ.App., 90 S.W.2d 622, the jury found that the insurer's physician told plaintiff that his spine was not injured, whereas, in fact, it was; that the physician did not know the condition of the spine; that the plaintiff relied on that statement, thereby induced to settle a compensable claim. The findings of the jury in that case were based on testimony very similar to that introduced here. The plaintiff testified that he was examined by a Dr. Heyman, agent for the Insurance Company, at the request of J. C. Ward, claim agent for the company, and that Dr. Heyman told the plaintiff that he would be able to go to work in a couple of weeks or a month at the outside; that plaintiff had suffered a sprain or strain of his back, but he did not think it was spinal injuries. A comparison of the testimony in the instant case shows a decidedly less ground to avoid a compromise settlement than the facts in the above cited case. In that case, the Fort Worth Court of Appeals said [page 625]:

"Even though it be said that the jury was authorized to find that plaintiff relied

solely on the statements by Dr. Heyman with respect to his injuries to the exclusion of the advice theretofore given him by Dr. Parrish, whom he himself first selected, yet the foregoing testimony shows beyond doubt that Dr. Heyman's statements were expressions of opinion only, and that he did not in fact know the condition of plaintiff's spine, all as found by the jury. And therefore those findings could not furnish a proper basis for cancellation of the settlement on the ground of fraud. Commercial Casualty Insurance Co. v. Hilton, supra; Quebe v. Gulf, C. & S. F. Ry. Co., 98 Tex. 6, 81 S.W. 20, 21, 66 L.R.A. 734, 4 Ann.Cas. 545; Goodwin v. Texas Employers' Insurance Ass'n (Tex.Civ.App.) 73 S.W.(2d) 660, 661; Lloyd v. Junkin (Tex.Civ.App.) 75 S.W. (2d) 712, 714, and authorities there cited, including Barrett v. Featherstone, 89 Tex. 567, 35 S.W. 11, 36 S.W. 245; Wortman v. Young (Tex.Civ.App.) 221 S.W. 660; Laybourne v. Bray & Shifflett (Tex.Civ. App.) 190 S.W. 1159; Landrum v. Thomas (Tex.Civ.App.) 149 S.W. 813; Horton v. Smith (Tex.Civ.App.) 145 S.W. 1088; El Paso & Southwestern Co. v. Kramer (Tex.Civ.App.) 141 S.W. 122 (writ refused). See, also, notes of decisions on the subject of setting aside compromise settlement for personal injuries on the ground of fraud, 48 A.L.R. beginning on page 1486."

In Texas Employers' Ins. Ass'n v. Manning, Tex.Civ.App., 299 S.W. 534, the jury found that the compromise settlement had been procured by the fraudulent representations of the defendant's physician as to the extent and character of plaintiff's injuries. The evidence showed that the physician had told the employe that he was suffering from a fistula of long standing; other physicians who had examined the plaintiff testified to the same effect. The Beaumont Court of Appeals held that the finding that the defendant's physician had been guilty of fraud and that that fraud had induced the execution and delivery of the agreement was wholly without support in the evidence. The facts in the above cited case are similar to the facts in the instant case, except here, it is not charged that the physicians of the Samuell Clinic were guilty of fraud in diagnosing the cause of appellant's pain in the back, but the suit is wholly predicated on the statements made by Perry Davis, as to what the clinical report showed.

In Indemnity Ins. Co. of North America v. Sterling, Tex.Civ.App., 51 S.W.2d 788, the plaintiff alleged that at the time of executing the compromise settlement, he did not know his true physical condition, that the defendant's agent did know it and concealed it from plaintiff, representing to the plaintiff that he would recover, and that the plaintiff believed and relied upon that representation. The jury found that the plaintiff did not know his true physical condition, that the defendant's agent did know it and concealed it from the plaintiff, and that the plaintiff believed in and relied on the false representation and would not have settled but for it. The Beaumont Court of Appeals said [page 790]:

"On the undisputed evidence, the jury's findings that W. Hilton Berger knew the true physical condition of appellee and concealed that fact from him, at the time of the settlement, and that appellee did not know his true physical condition and would not have made the compromise settlement if he had known the nature and extent of his injuries, did not constitute actionable fraud. This is so because, on the undisputed evidence, appellee did not deal with W. Hilton Berger on this phase of his case, on a confidential basis. He did not rely upon Berger to furnish him information as to his true physical condition, but employed a doctor for this purpose and a lawyer to advise him of his legal rights, and on their advice made the settlement. The judgment of the court, therefore, has no support in the jury's answers to questions 4 and 5, and plaintiff's specially requested issue No. 1."

This is strikingly similar to the facts in the instant case. Appellant here sought medical advice of his own, and well knew that Perry Davis had made no examination of him and had no independent knowledge as to his condition other than the report from the Samuell Clinic. Appellant was not dealing with Davis on a confidential basis, as Davis did not profess to know what was the matter with him, only expressing an opinion based on reports furnished to him.

In my opinion, the majority decision in the instant case is contrary to and in conflict with all adjudicated cases in this State dealing with the issue of fraud to avoid compromise agreements, which have been approved by the Texas Industrial Accident Board; and, in my opinion, is not in keeping with letter and spirit of the Work-

men's Compensation Law (Acts 35th Leg. ch. 103, part 2, § 12; Vernon's Ann.Civ. St. art. 8307, § 12), reading: "Where the liability of the association or the extent of the injury of the employé is uncertain, indefinite or incapable of being satisfactorily established, the board may approve any compromise, adjustment, settlement or commutation thereof made between the parties."

In the light of this record, obviously, appellant's injury, if any, was uncertain, indefinite and incapable of being satisfactorily established; the symptoms were purely subjective—pain in the side and back—which could not be seen or felt, therefore, in the absence of fraud, of which there is not a centiliter of testimony, the parties had a legal right to make the settlement, and the courts of this State are not clothed with authority to set it aside without cause or reason. Before the settlement agreement was signed, appellant went to see his own family physician, Dr. Fry, who made an X-ray of his back, and to his own dentist, Dr. Jordan, who advised him of the condition of his teeth; and, before the final order of approval was entered by the Industrial Accident Board, and before he had collected from appellee the $150 of the settlement, he had all of his teeth pulled by his own dentist, Dr. Moore.

Furthermore, it is believed that the judgment of the trial court should be affirmed for the reason appellant failed to prove that he filed a claim for compensation with the Industrial Accident Board within six months after the alleged injury, and before the filing of the suit. It is settled law in this State that where a claimant has wholly failed to file a claim for compensation with the Industrial Accident Board, such failure is fatal to his cause, irrespective of the issue of fraud, to avoid a compromise settlement agreement. The filing of an agreement with and the approval by the Board does not satisfy the requirement of the law.

In Erickson v. Texas Employers' Ins. Ass'n, 105 S.W.2d 459, the Galveston Court of Civil Appeals held that the filing of a petition with the Industrial Accident Board to set aside an award denying employe's application to set aside a compromise settlement agreement was insufficient as a claim for compensation, or to show a meritorious cause for failure to make the claim, notwithstanding the allegation and proof showing that the compromise settlement was obtained by fraud, and that the claim was filed with the Board within reasonable time after discovering the impositions practiced on the employe. Citing in support of the holding, the following authorities [page 462]: "3 Black on Rescission and Cancellation (2d Ed.1929) sec. 567; Russell v. Industrial Transp. Co., 113 Tex. 441, 251 S.W. 1034, 258 S.W. 462, 51 A.L.R. 1; Dowlin v. Boyd (Tex.Com. App.) 291 S.W. 1095; Hoeldtke v. Horstman, 61 Tex.Civ.App. 148, 128 S.W. 642, affirmed Hill v. Hoeldtke, 104 Tex. 594, 142 S.W. 871, 40 L.R.A. (N.S.) 672; Baden v. Deragowski (Tex.Civ.App.) 7 S.W.2d 123 (writ of error refused); Schuermann v. Union Central Life, Ins. Co., 165 Mo. 641, 65 S.W. 723; article 8307, § 4a, R.S. of Tex.; Maryland Casualty Co. v. Johnson (Tex.Civ.App.) 87 S.W.(2d) 342 (writ of error refused); Ocean Accident & Guarantee Corporation v. Pruitt (Tex.Com. App.) 58 S.W.(2d) 41; Texas Employers' Ins. Ass'n v. Whiteside (Tex.Civ. App.) 77 S.W.(2d) 767; Texas Employers' Ins. Ass'n v. Palmer (Tex.Civ.App.) 66 S.W.(2d) 454; Texas Employers' Ins. Ass'n v. Schoeppel (Tex.Civ.App.) 10 S.W. (2d) 405."

The evidence in this case is undisputed that appellant suffered the alleged injury on May 13, 1935, that he saw Dr. Powell, his own physician, in September, 1935, when he learned from him that he had received injury to his back; and, again in November, 1935, he learned from Dr. Kilgore, to whom he had been sent by his attorney, the full extent of his alleged injuries. This suit was filed on May 5, 1936. Appellant admits and the proof so shows that no claim for compensation was ever filed with the Industrial Accident Board, and no reason advanced for such failure. Therefore, since the proof was lacking in such prerequisite to confer jurisdiction on the trial court—wholly failing to show facts essential for compensation under the law, in that, appellant failed to prove that any claim for compensation had ever been filed, or good reason shown for not having filed his claim therefor—appellant's averment to the effect that the compromise settlement had been obtained by fraud and the settlement had been approved by the Industrial Accident Board, did not comply with the law, thus the setting aside of the compromise settlement agreement would avail appellant nothing.

The pleadings and evidence also fail to show a tender-back of the consideration of $150, for the compromise settlement agreement, or present a willingness or offer to do equity in reference thereto. This is also fatal to appellant's cause of action. Casualty Reciprocal Exchange v. Bryan, Tex.Civ.App., 101 S.W.2d 895. The majority opinion concedes merit in the proposition that a prerequisite to the cancellation of a compromise settlement agreement is a tender-back of the consideration received, placing the other party in statu quo, or pleadings containing allegations excusing plaintiff from such duty. I am in accord with that pronouncement. The proof discloses no tender nor do appellant's pleadings make allegations with reference thereto. Indeed, if plaintiff's allegations and proof fail in such essential prerequisite, obviously, the trial court did not err in instructing the verdict, accordingly entering the judgment, from which this appeal is prosecuted.

The trial court could not do more and, certainly, should not have done less, when an essential element for recovery is not present in plaintiff's pleadings or evidence; and, it is not believed that it is within the province of appellate courts to reverse the trial court's judgments to, perchance, enable plaintiff to properly plead and prove essential prerequisites of a law suit.

For the reasons above stated, I believe the judgment of the trial court should be affirmed.

### On Motion for Rehearing.

YOUNG, Justice.

Appellee urges, among other things in its motion, that upon our sustaining its position of a defect in appellant's pleading and proof as to tender, this cause should be affirmed, and not remanded to enable plaintiff to correct such matters; asserting the record was otherwise free of error. The majority opinion, above, decided that the trial court erred in granting a peremptory instruction against plaintiff upon the main issue discussed, and it was unanimously our conclusion that a tender back was a condition precedent to a recovery, without which the particular pleading was lacking in the material elements of a cause of action. In such a situation, a general demurrer should have been sustained to plaintiff's petition; it being well settled that, where a litigant is deprived of his right to amend or cure defects of pleading by error of the trial court in overruling a general demurrer, the cause should be remanded so that such party, if he can, may pursue the valuable course of amendment. Wichita County v. Tittle, Tex.Com.App., 41 S.W.2d 11; Grand Court of Texas v. Smith, Tex.Civ.App., Dallas Court, 39 S.W.2d 187; Shell Petroleum Corporation v. Burnett, Tex.Civ.App., 91 S.W.2d 1091. Upon full consideration of said motion for rehearing and propositions therein raised, it is, in all respects, overruled.

Overruled.

BOND, C.J., dissents.